[No. S063512. Mar. 29, 1999.]

THE PEOPLE, Plaintiff and Respondent, v.
JOHN DAVID WILLIAMS, Defendant and Appellant.

**COUNSEL**

Laura G. Schaefer, under appointment by the Supreme Court, for Defendant and Appellant.

Daniel E. Lungren and Bill Lockyer, Attorneys General, George Williamson, Chief Assistant Attorney General, Robert R. Anderson, Assistant Attorney

General, Shirley A. Nelson, Michael J. Weinberger and Harry Joseph Colombo, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**CHIN, J.**—In this case, we consider the specificity required in a motion to suppress evidence under Penal Code section 1538.5 (section 1538.5). We conclude that a defendant must state the grounds for the motion with sufficient particularity to give notice to the prosecution of the sort of evidence it will need to present in response. In this case, we find that defendant's moving papers were sufficient to provide this notice to the prosecution, and that he did not narrow the scope of his motion at the hearing. Accordingly, we reverse the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

On April 3, 1996, about 8:30 a.m., Tuolumne County Sheriff's Deputy Robin Hunt began surveilling a brown Chevrolet pickup truck that he saw parked outside a home where he suspected "drug activity." He called Deputy John F. Oliver for assistance. About 15 minutes later, Hunt saw the truck make a right turn at an intersection without signaling. He stopped the truck, and defendant, who was the driver, produced an identification card, but no driver's license. Hunt ran a check on the status of defendant's driver's license and learned that it had expired.

Because defendant was the vehicle's sole occupant and his license had expired, department policy required Hunt to tow the vehicle and fill out a "CHP 180," which is a standard California Highway Patrol form. Department policy also required Hunt to take an inventory of the vehicle's contents. The purpose of the CHP 180 form and the inventory is, among other things, to preserve a record of the physical condition of the vehicle and its contents when police take possession of it. When Deputy Oliver arrived to assist, Hunt asked him to fill out the CHP 180 form while Hunt took the inventory.

In taking the inventory, Hunt saw three leather bags on the front bench seat of the truck right next to the driver's seat. He opened the bags and found methamphetamine. At this point, Oliver stopped filling out the CHP 180 form and watched defendant while Hunt continued to take the inventory. Hunt also called for narcotics officers to take over the investigation. Before they arrived, however, Hunt arrested defendant for possession of methamphetamine, handcuffed him, and put him in the patrol car. The officers never completed the CHP 180 form or the inventory list.

By information dated May 9, 1996, the Tuolumne County District Attorney charged defendant with transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)), possession of methamphetamine for sale (Health & Saf. Code, § 11378), and possession of an opiate (Health & Saf. Code, § 11350, subd. (a)). The information further alleged with respect to each count that defendant had a prior serious felony conviction (Pen. Code, § 667, subds. (b)-(i)), that he had served four prior prison terms (Pen. Code, § 667.5, subd. (b)), and that he was ineligible for probation (Pen. Code, § 1203, subd. (e)(4)).

On June 24, 1996, defendant filed a motion to suppress evidence, including the methamphetamine police found in his truck. (§ 1538.5, subd. (a).) In his moving papers and at the subsequent hearing, defendant tried to show that the traffic stop was a "ruse" or a "pretext" for searching the truck. He argued that the police lacked probable cause to stop him, because the right turn that he had made without signaling was part of the "natural flow of traffic," and therefore a turn signal was not necessary. He also pointed out that Deputy Hunt called for Deputy Oliver's assistance before making the traffic stop, arguing that Hunt would not have needed Oliver's assistance for an ordinary traffic stop. He asserted that the police had never actually intended to inventory the contents of the truck; rather, the inventory was an after-the-fact justification for a search that violated his Fourth Amendment rights. (U.S. Const., 4th Amend.) In this regard, he emphasized that the police had never completed the inventory. Finally, he asserted that the police had no policy governing inventory searches.

The court denied the motion to suppress without stating its reasons, and, later the same day, defendant pleaded guilty to transportation of methamphetamine (Health & Saf. Code, § 11379, subd. (a)) and admitted three of the prior prison term allegations. Defendant waived his right to appeal, but he expressly reserved his right to appeal the court's denial of his suppression motion. The prosecution then moved to dismiss the other charges and allegations, and the court granted the motion. On July 22, 1996, the court sentenced defendant to six years in prison, representing the middle term of three years for transportation of methamphetamine, plus three consecutive one-year enhancements for the three prior prison terms. The court also ordered defendant to pay a $1,200 restitution fine (Pen. Code, § 2085.5) and a $50 laboratory fee (Health & Saf. Code, § 11372.5).

On August 22, 1996, defendant filed a timely notice of appeal, arguing that the court should have granted his suppression motion, and, on August 28, 1996, the trial court issued a certificate of probable cause for appeal, though one was not necessary. (See § 1538.5, subd. (m).) On appeal, defendant argued the police were not following a preexisting policy and therefore

violated his right to be free from "unreasonable searches and seizures" when they opened the leather bags containing the methamphetamine. (U.S. Const., 4th Amend.; see also *Florida* v. *Wells* (1990) 495 U.S. 1 [110 S.Ct. 1632, 109 L.Ed.2d 1] (*Wells*).) He asserted that, though the police may have had a policy requiring them to take an inventory of the contents of a vehicle before towing it, they had no policy governing the *opening of closed containers* during the course of this inventory.

The Court of Appeal affirmed. Following the reasoning of *People* v. *Auer* (1991) 1 Cal.App.4th 1664 [2 Cal.Rptr.2d 823] (*Auer*), the court held that defendant did not preserve the closed-container issue for appeal because he did not raise it adequately in the trial court. According to the court, allowing defendant to raise this theory on appeal "would be unfair both to the People and to the trial court." The court added, "We have no way of knowing what evidence the prosecutor might have adduced on the merits of this issue." Because the court concluded that defendant's motion was not sufficiently specific to put the prosecution on notice, it did not address the merits of his appeal.

We granted defendant's petition for review in order to consider the specificity required in a motion to suppress evidence.

### DISCUSSION

The Fourth Amendment of the United States Constitution, which is enforceable against the states as a component of the Fourteenth Amendment's guaranty of due process of law (*Mapp* v. *Ohio* (1961) 367 U.S. 643, 643-660 [81 S.Ct. 1684, 1685-1694, 6 L.Ed.2d 1081] (*Mapp*)), provides in relevant part: "The right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures, shall not be violated . . . ." The United States Supreme Court has interpreted the Fourth Amendment as requiring state and federal courts to exclude evidence that government officials obtained in violation of the amendment's protections. (*Mapp, supra,* 367 U.S. at p. 655 [81 S.Ct. at pp. 1691-1692].)

One of those protections is that a government official must obtain a warrant from a judicial officer before conducting a search or seizure. "The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable [people] draw from evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. . . . [Therefore,] [w]hen the

right of privacy must reasonably yield to the right of search is, as a rule, to be decided by a judicial officer, not by a policeman or government enforcement agent." (*Johnson* v. *United States* (1948) 333 U.S. 10, 13-14 [68 S.Ct. 367, 369, 92 L.Ed. 436], fn. omitted.) Nevertheless, "[t]here are exceptional circumstances in which, on balancing the need for effective law enforcement against the right of privacy, it may be contended that a magistrate's warrant for search may be dispensed with." (*Id.* at pp. 14-15 [68 S.Ct. at p. 369].)

■ For example, in *Colorado* v. *Bertine* (1987) 479 U.S. 367 [107 S.Ct. 738, 93 L.Ed.2d 739] (*Bertine*), the high court recognized that police have a legitimate interest in taking an inventory of the contents of a vehicle, including closed containers inside that vehicle, before towing it. This inventory serves "to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen, or vandalized property, and to guard the police from danger." (*Id.* at p. 372 [107 S.Ct. at p. 741].) The court stated that "inventory searches are now a well-defined exception to the warrant requirement of the Fourth Amendment." (*Id.* at p. 371 [107 S.Ct. at p. 741].) Nevertheless, the court also recognized the risk that police might use an inventory of this kind as a pretext for searching a vehicle for contraband or other evidence. (*Id.* at pp. 375-376 [107 S.Ct. at p. 743].) Accordingly, the court emphasized that police must "follow[] standardized procedures." (*Id.* at p. 372 [107 S.Ct. at p. 741]; see also *id.* at p. 374, fn. 6 [107 S.Ct. at p. 742].) "[R]easonable police regulations relating to inventory procedures administered in good faith satisfy the Fourth Amendment." (*Id.* at p. 374 [107 S.Ct. at p. 742].)

In *Wells*, the high court reaffirmed the same principle. There, the police took an inventory of a car's contents and found marijuana in a locked suitcase in the trunk. (*Wells, supra,* 495 U.S. at p. 2 [110 S.Ct. at p. 1634].) The court concluded that the trial court should have suppressed the evidence because police had "no policy whatever with respect to the opening of closed containers encountered during an inventory search." (*Id.* at pp. 4-5 [110 S.Ct. at p. 1635].) The court added, "Our view that standardized criteria [citation] or established routine [citation] must regulate the opening of containers found during inventory searches is based on the principle that an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence. The policy or practice governing inventory searches should be designed to produce an inventory." (*Id.* at p. 4 [110 S.Ct. at p. 1635].)

Here, the record indicates that the police had a policy requiring them to inventory the contents of a vehicle before towing it, but, as in *Wells*, the record contains "no evidence of any . . . policy on the opening of closed

containers." (*Wells, supra,* 495 U.S. at p. 3 [110 S.Ct. at p. 1634].) Of course, *Wells* does not require a *written* policy governing closed containers or a policy that leaves no room for police discretion, but the record must at least indicate that police were following some "standardized criteria" or "established routine" when they elected to open the containers (*id.* at p. 4 [110 S.Ct. at p. 1635]), and the record here fails to do so.

While *Wells* clearly supports defendant's argument that the police did not conduct a valid inventory search, the question here is whether defendant adequately raised this issue in the trial court, and thus preserved the issue for appeal. Defendant's trial court brief in support of his motion to suppress asserted that the search was improper because the police had no policy governing the taking of an inventory. The brief also cited and quoted the portion of *Wells* that requires a specific policy or practice governing the opening of closed containers. But the main thrust of defendant's brief was that the police stopped his truck without probable cause, not that the inventory search was improper. The Court of Appeal found this brief insufficient to bring the issue of a policy governing closed containers to the attention of the prosecution and the court. We disagree.

Section 1538.5 governs motions to suppress evidence obtained as a result of a search or seizure. At the time of the trial court proceedings in this case, section 1538.5, subdivision (a), provided: "A defendant may move . . . to suppress as evidence any tangible or intangible thing obtained as a result of a search or seizure on either of the following grounds: [¶] (1) The search or seizure without a warrant was unreasonable. [¶] (2) The search or seizure with a warrant was unreasonable because . . . [for specified reasons, the warrant was inadequate]." (Stats. 1993, ch. 761, § 2.) Here, of course, the search was without a warrant. Defendant notes that the prosecution has the burden of proving, if it can, some justification for a warrantless search or seizure (*Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23] (*Badillo*); see also *People* v. *Williams* (1988) 45 Cal.3d 1268, 1300 [248 Cal.Rptr. 834, 756 P.2d 221]; *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1, 15, fn. 15 [109 Cal.Rptr. 684, 513 P.2d 908]), and therefore a warrantless search is presumptively unreasonable. Citing this rule, defendant argues that he needed to be no more specific than to assert a warrantless search in order to satisfy his obligation under section 1538.5. He argues that, once defendants have made a prima facie showing that the police proceeded without a warrant, the prosecution must prove a justification for the search or seizure, defendants need not respond, and, if the prosecution's justification is somehow inadequate, defendants can raise that inadequacy for the first time on appeal.

The Attorney General, on the other hand, argues that defendants must give notice to the prosecution of the precise theory under which they assert the

warrantless search or seizure violated their Fourth Amendment rights. As part of this requirement, the Attorney General argues defendants must highlight the flaws in any justification that the prosecution offers for the search or seizure, thereby enabling the prosecution to supplement the record if necessary.

■ Before addressing these arguments, we emphasize the distinction between the burden of raising an issue and the burden of proof. By "burden of raising an issue," we refer to a party's obligation to bring an issue to the attention of the trial court and the opposing party, with the consequence that, if the party fails to do so, it waives the right to raise the issue on appeal. On the other hand, by "burden of proof," we refer to a party's "obligation . . . to establish by evidence a requisite degree of belief concerning a fact." (Evid. Code, § 115.) This "requisite degree of belief" varies depending on the context, but courts commonly describe it with one of three verbal formulations: proof "by a preponderance of the evidence," "by clear and convincing" evidence, and "beyond a reasonable doubt." (Evid. Code, § 115; see also *Addington* v. *Texas* (1979) 441 U.S. 418, 423-425 [99 S.Ct. 1804, 1808-1809, 60 L.Ed.2d 323].)

Generally, the party that has the burden of raising an issue also has the burden of proof with respect to that issue (1 Witkin, Cal. Evidence (3d ed. 1986) Burden of Proof and Presumptions, §§ 131-132, p. 116), but this usual correlation does not represent an immutable rule. (See, e.g., *id.* at §§ 136-139, pp. 119-122.) We see no inconsistency in requiring, when appropriate, a criminal defendant to raise an issue, but then requiring the prosecution to disprove the defendant's contentions once the issue is before the court. Here, for example, defendant does not argue that he could have dispensed with his motion to suppress altogether; rather, he concedes that he had to take some minimal step to bring the issue of the warrantless search before the trial court. Nevertheless, once defendant had properly raised the issue, the prosecution had the burden of proof. (*Badillo, supra,* 46 Cal.2d at p. 272.)

The question in this case is not, of course, whether defendant brought a motion to suppress, but whether his motion was sufficiently specific. But, like the first question, this specificity question does not depend on the allocation of the burden of proof. True, we have held in the context of a motion for acquittal that defendants need not specify "the gaps in the prosecution's case" because to impose that requirement would be inconsistent with the prosecution's burden of proof. (*People* v. *Belton* (1979) 23 Cal.3d 516, 522 [153 Cal.Rptr. 195, 591 P.2d 485].) But that holding merely reflects the usual correlation between the burden of raising an issue and the burden of proof. It is irrelevant to our resolution of the same question in this

very different context, where the prosecution may be able to relitigate the suppression issue after reversal on appeal (§ 1538.5, subd. (j)), and therefore any lack of specificity in the trial court will only delay the proceeding. In sum, the circumstance that the prosecution has the burden of proof does not preclude our holding that, at least in this context, defendants must precisely pinpoint the subject matter of that proof.

■ Section 1538.5, by its terms, authorizes a motion to suppress if "[t]he search or seizure without a warrant was *unreasonable*." (Italics added.) "The clear implication of the subsection is that the evidence need not be suppressed, if the seizure was *reasonable*. To state the implication positively: a warrantless seizure of evidence may be valid if reasonable cause for the seizure exists." (*People* v. *Curley* (1970) 12 Cal.App.3d 732, 746 [90 Cal.Rptr. 783].) Therefore, defendants must do more than merely assert that the search or seizure was without a warrant. The search or seizure must also be unreasonable; that is, it must not fall within any exception to the warrant requirement. To address properly *both* concepts included in section 1538.5, defendants have the burden of (1) asserting the search or seizure was without a warrant, and (2) explaining why it was unreasonable under the circumstances.

In this regard, section 1538.5 is consistent with generally applicable and long-standing rules of motion practice. A motion is an application to the court for an order. (Code Civ. Proc., § 1003.) In general, the moving party must carry the initial burden of informing its opponent and the court of the specific basis for its motion. (See, e.g., Cal. Rules of Court, rule 313(a), (b).) If the rule were otherwise, then the party opposing the motion would have to try to guess, and then refute, every possible basis for the motion, which would always be inefficient and would often produce arbitrary results. Similarly, when defendants move to suppress evidence under section 1538.5, they must inform the prosecution and the court of the specific basis for their motion.

Nevertheless, we can discern no reason for requiring defendants to guess what justification the prosecution will offer at the risk of forfeiting the right to challenge that justification. Under such a rule, defendants would routinely safeguard their rights by enumerating, and then refuting, every possible justification for a warrantless search or seizure. Motions to suppress would be filled with pages of unnecessary argument about justifications that the prosecution is readily willing to concede are inapplicable. Because law enforcement personnel, not the defendant, made the decision to proceed without a warrant, they, not the defendant, are in the best position to know what justification, if any, they had for doing so.

Therefore, when the basis of a motion to suppress is a warrantless search or seizure, the requisite specificity is generally satisfied, *in the first instance*, if defendants simply assert the absence of a warrant and make a prima facie showing to support that assertion. Of course, if defendants have a specific argument *other than the lack of a warrant* as to why a warrantless search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on the point. (*People* v. *Britton* (1984) 156 Cal.App.3d 689, 699-700 [202 Cal.Rptr. 882] (*Britton*).) For example, defendants who believe the police failed to comply with the knock-notice requirement of Penal Code section 844 cannot simply bring a motion to suppress alleging a warrantless search or seizure and then wait until the appeal to raise the knock-notice issue. Rather, defendants must specify the knock-notice issue in the course of the trial court proceeding. (*Britton, supra*, 156 Cal.App.3d at pp. 699-700; see also *People* v. *Kizzee* (1979) 94 Cal.App.3d 927, 934 [156 Cal.Rptr. 784]; *People* v. *Lopez* (1978) 81 Cal.App.3d 103, 108 [146 Cal.Rptr. 165] (*Lopez*).)

Moreover, once the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate. (See, e.g., *People* v. *Coleman* (1991) 229 Cal.App.3d 321, 324-325 [280 Cal.Rptr. 54] (*Coleman*).) Otherwise, defendants would not meet their burden under section 1538.5 of specifying why the search or seizure without a warrant was "unreasonable." This specificity requirement does not place the burden of proof on defendants. (Cf. *People* v. *Sedillo* (1982) 135 Cal.App.3d 616, 624 [185 Cal.Rptr. 475] (*Sedillo*).) As noted, the burden of raising an issue is distinct from the burden of proof. The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances. (*Badillo, supra*, 46 Cal.2d at p. 272; Stats. 1997, ch. 279, § 5.) But, if defendants detect a critical gap in the prosecution's proof or a flaw in its legal analysis, they must object on that basis to admission of the evidence or risk forfeiting the issue on appeal.

In sum, we conclude that under section 1538.5, as in the case of any other motion, defendants must specify the precise grounds for suppression of the evidence in question, and, where a warrantless search or seizure is the basis for the motion, this burden includes specifying the inadequacy of any justifications for the search or seizure. In the interest of efficiency, however, defendants need not guess what justifications the prosecution will argue. Instead, they can wait for the prosecution to present a justification. Moreover, in specifying the inadequacy of the prosecution's justifications, defendants do not have to help the prosecution step-by-step to make its case. The degree of specificity that is appropriate will depend on the legal issue the

defendant is raising and the surrounding circumstances. Defendants need only be specific enough to give the prosecution and the court reasonable notice. Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked.

Court of Appeal decisions addressing the specificity required in a motion to suppress evidence are generally consistent with this rule. Most of those decisions follow either *People* v. *Manning* (1973) 33 Cal.App.3d 586, 589 [109 Cal.Rptr. 531] (*Manning*) or *Wilder* v. *Superior Court* (1979) 92 Cal.App.3d 90 [154 Cal.Rptr. 494] (*Wilder*). Though some decisions argue that *Manning* and *Wilder* are in conflict, we find them reconcilable.

In *Manning*, police found the defendant in the backseat of a car, " 'slumped over as if unconscious.' " (*Manning, supra*, 33 Cal.App.3d at p. 591.) They roused him and asked him to exit the car. After he did so, they noticed on the car floor in front of where he had been sitting " 'four capsules that contained a white substance resembling Seconal.' " (*Ibid.*) The defendant moved to suppress this evidence, but without stating specific grounds other than violation of his " 'Fourth Amendment rights.' " (*Id.* at p. 590.) The trial court granted the motion. The court reasoned that the police had no basis for requiring the defendant to exit the car, and, if he had not done so, they never would have seen the capsules. The trial court emphasized that, before exiting the car, the defendant had assured the police he was " 'all right,' " though the record contained no evidence of this statement. (*Id.* at pp. 592-593.)

The appellate department of the superior court reversed, but, on its own motion, requested clarification from the Court of Appeal regarding the " 'formal requirements . . . for a motion [to suppress] under . . . section 1538.5.' " (*Manning, supra*, 33 Cal.App.3d at p. 589.) The Court of Appeal concluded that a section 1538.5 motion is not different from other motions, and the usual rules of motion practice apply, including "notice specifying the matters upon which the motion will be based and the grounds upon which it is made." (*Manning, supra*, 33 Cal.App.3d at pp. 594-595; see also *id.* at p. 598.) The court expressly acknowledged that the prosecution bears the burden of proof, but rejected the argument that the prosecution also has the burden "to array all police activity for scrutiny as to all imaginable, but previously unintimated, constitutional criticism." (*Id.* at p. 596.)

Thus, in *Manning*, the court required the defendant to specify the theory of his motion to suppress, and required the prosecution to respond to the specific points he raised, not to anticipate every possible defect he might

assert. Though the defendant had not specified the grounds of his suppression motion, the court nevertheless found his motion sufficiently specific to reach the merits. According to the court, any "insufficiency [in the defendant's motion] was at least largely overcome in this instance by the court's urging and announcement of the basis for its ruling and by the participation and argument of both counsel." (*Manning, supra,* 33 Cal.App.3d at p. 598.) We did not grant review in *Manning,* but we cited it with approval in *People v. Brooks* (1980) 26 Cal.3d 471, 480 [162 Cal.Rptr. 177, 605 P.2d 1306], saying, "it is unfortunate the record is lacking in clarity as to the precise grounds for defendant's initial motion under section 1538.5; we recognize it was *defendant's* obligation to specify these grounds." (Italics added.)

In *Wilder,* the Court of Appeal, without discussing *Manning,* adopted what some courts have characterized as a conflicting rule. In *Wilder,* a police officer told the defendant that he would impound the defendant's van if the defendant did not drive it to the Visalia Police Department. (*Wilder, supra,* 92 Cal.App.3d at p. 93.) Once the van was at the police department, the officer contacted individuals who had reported thefts to the police, and they identified certain items located on the van—including a sunroof, rearview mirrors, and a luggage rack—as their missing property. (*Ibid.*) The defendant moved to suppress these items because the police officer had seized them without a warrant when he ordered the defendant to drive the van to Visalia. (*Id.* at pp. 92, 94-95.) The trial court denied the motion to suppress (*id.* at p. 93), and the defendant sought a writ of mandate (*id.* at p. 92).

The Court of Appeal granted the writ, concluding that the trial court should have suppressed the evidence. (*Wilder, supra,* 92 Cal.App.3d at p. 97.) The court found that the "seizure of the van . . . was not constitutionally reasonable" based on the information available to the police at that time. (*Id.* at p. 95.) In dictum, the court then noted that the trial court procedure caused the prosecution to omit "crucial evidence and . . . viable legal arguments" and required the Court of Appeal "to consider an inordinate number of [irrelevant] contentions." (*Id.* at p. 96.) In the court's view, the trial court had "erroneously . . . required [the defendant] to assert specific attacks upon the warrantless seizure . . . before [the prosecution] articulated its justifications for the seizure." (*Ibid.*) The court proposed the "obvious solution" that, after the defendant "moved to suppress . . . evidence [citation] upon the ground such evidence was seized without a warrant[,] . . . [t]he prosecutor should have pleaded his justification . . . ." (*Ibid.*) Then, the defendant "should have been allowed an opportunity to file a written response to the attempted justification . . . ." (*Id.* at p. 97.) *Wilder* has spawned a handful of cases holding that defendants need do no more than assert and prove that evidence was seized without a warrant in order to

preserve Fourth Amendment issues for appeal. (See, e.g., *Britton, supra,* 156 Cal.App.3d at pp. 698-700; *Sedillo, supra,* 135 Cal.App.3d at pp. 623-625; *People* v. *Palmquist* (1981) 123 Cal.App.3d 1, 12, fn. 7 [176 Cal.Rptr. 173] (*Palmquist*).)

In *People* v. *Hallman* (1989) 215 Cal.App.3d 1330 [264 Cal.Rptr. 215] (*Hallman*), the court rejected *Wilder* in favor of *Manning.* (*Hallman, supra,* 215 Cal.App.3d at pp. 1333, 1342.) At issue was the validity of a local rule that required defendants " 'specifically [to] state the theory or theories which shall be relied upon and urged for the suppression of evidence; and cite the specific authority or authorities which will be offered in support of the theory or theories upon which suppression of the evidence is urged.' " (*Id.* at p. 1337.) The court stated that the *Wilder* procedure, which did not require defendants to be so specific at least in the first instance, was "not constitutionally compelled," and therefore courts "may require a defendant to follow a different procedure." (*Hallman, supra,* 215 Cal.App.3d at p. 1338.) The court also criticized *Wilder,* saying that "it requires the prosecutor to canvass the entire area of search and seizure law and to raise all conceivable issues [citation] or permit the defendant to raise the undetected issue for the first time on appeal. [Citation.]" (*Hallman, supra,* 215 Cal.App.3d at p. 1339.) The court further asserted that *Wilder* "confused th[e] burden [of proof] with the normal pleading requirements which are imposed on a moving party in any motion." (*Hallman, supra,* 215 Cal.App.3d at pp. 1338-1339.) For that reason, and because *Wilder* nowhere discussed *Manning,* the court concluded that *Wilder* was "erroneously decided," and therefore found the local rule valid. (*Hallman, supra,* 215 Cal.App.3d at p. 1342; see also *Auer, supra,* 1 Cal.App.4th at p. 1670 [citing *Manning*]; *Coleman, supra,* 229 Cal.App.3d at pp. 324-325 [rejecting *Wilder*]; *People* v. *Davis* (1989) 215 Cal.App.3d 1348, 1350 [264 Cal.Rptr. 225] [same].)

We do not think that the *Hallman* court's rejection of *Wilder* in favor of *Manning* was correct. But neither do we think that affirmation of *Wilder* requires disapproval of *Manning.* In *Manning,* the Court of Appeal correctly concluded that the usual rules of motion practice apply to a section 1538.5 motion, including "notice specifying the matters upon which the motion will be based and the grounds upon which it is made." (*Manning, supra,* 33 Cal.App.3d at pp. 594-595; see also *id.* at p. 598.) The defendant in *Manning* would have satisfied this obligation if, when he moved for exclusion of the Seconal capsules, he had expressly argued that the police exceeded their authority by ordering him out of the car. Instead, refusing to be more specific, the defendant moved to exclude the evidence simply for " 'violation of [his] Fourth Amendment rights.' " (*Id.* at p. 590.) That motion was inadequate, and the trial court could have denied it on that ground, rather

than forcing the prosecution to present all the circumstances leading to discovery of the capsules without any idea of what, if anything, the defendant found objectionable. As the Court of Appeal stated, "It seems a plain distortion of section 1538.5 to routinely require a full array of the People's evidence and its source as a discovery aid to a defendant in framing his constitutional contentions." (*Id.* at p. 597.)

Nevertheless, despite the inadequacy of the defendant's motion in *Manning*, the matter proceeded to a hearing, and the prosecution offered evidence on how the police discovered the Seconal capsules. (*Manning, supra,* 33 Cal.App.3d at p. 591.) The trial court then discussed the matter with counsel and focused on the issue that became the subject of the appeal—that is, whether the police exceeded their authority when they ordered the defendant out of the car. (*Id.* at pp. 592-593.) The trial court's discussion of that issue gave the prosecution sufficient notice of at least that possible basis for the motion to suppress, and the prosecution could have sought leave to offer additional evidence at that point. Therefore, the Court of Appeal did not err in proceeding to the merits of that issue. (*Id.* at p. 598.)

In *Wilder*, on the other hand, the defendant moved to suppress certain evidence, expressly asserting that a police officer had seized it without a warrant. (*Wilder, supra,* 92 Cal.App.3d at p. 96.) The defendant also presented a prima facie case to support his assertion. (*Id.* at p. 93.) Under those circumstances, he had satisfied his initial obligation, and the prosecution then had the burden of proving some justification for the police officer's actions. The *Manning* court acknowledged this principle, saying, "[T]he burden is clearly upon the defendant, as moving party, to raise the issue of illegally obtained evidence. [Citation.] *It has been held, however, that . . . [a defendant who raises the issue] makes 'a prima facie case' when he establishes that an arrest or search was made without a warrant and that 'the burden then rests upon the prosecution to show proper justification.'* " (*Manning, supra,* 33 Cal.App.3d at p. 600, italics added.) The Court of Appeal in *Wilder* correctly criticized the trial court for "erroneously . . . requir[ing the defendant] to assert specific attacks upon the warrantless seizure . . . before [the prosecution] articulated its justification for the seizure." (*Wilder, supra,* 92 Cal.App.3d at p. 96.) The court's "obvious solution" was also correct: "The prosecutor should have pleaded his justification prior to the hearing . . . [and the defendant] should have been allowed an opportunity to file a written response to the attempted justification prior to the hearing." (*Id.* at pp. 96-97.) The defendant could also have waited until after the hearing and challenged the prosecution's proof of its justification, at which point a court should grant a continuance if necessary to allow the prosecution to offer additional evidence.

Accordingly, we see no conflict between *Wilder* and *Manning*, but we do not read *Wilder* as holding that defendants need do nothing more than assert that evidence was seized without a warrant in order to preserve Fourth Amendment issues for appeal. Defendants must also point out specific inadequacies in the prosecution's justifications for the warrantless search. We disapprove *Britton, supra,* 156 Cal.App.3d 689, *Sedillo, supra,* 135 Cal.App.3d 616, and *Palmquist, supra,* 123 Cal.App.3d 1, to the extent they suggest otherwise.

Nor is *Wilder* in conflict with the rule established in *Lopez* that defendants must specifically raise the issue of an inadequate knock-notice, rather than merely assert a warrantless search or seizure. (*Lopez, supra,* 81 Cal.App.3d at p. 108.) The assertion of a warrantless search or seizure obligates the prosecution to justify the actions of law enforcement, but it does not raise every possible suppression issue that a defendant may want to assert. As already noted, defendants who challenge some specific aspect of a search or seizure *other than the lack of the warrant* must specify the nature of that challenge at the outset. (*Britton, supra,* 156 Cal.App.3d at pp. 699-700 ["[T]he method of entry exists as an issue separate and apart from the issue of reasonableness of a search without a search warrant."].) The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence. In *Wilder*, the defendant's motion, which asserted the warrantless seizure of evidence, gave the prosecution fair notice of the defendant's argument, because his objection was generally to the lack of a warrant, not to some other aspect of the seizure. (See *Wilder, supra,* 92 Cal.App.3d at p. 96.)

Our conclusion—that defendants must specify the precise grounds for a motion to suppress, including pointing out any inadequacies in the prosecution's justifications for a warrantless search or seizure, but that they do not have to guess what those justifications will be—also does not conflict with recent amendments to the Penal Code, including section 1538.5. In 1997, the Legislature amended section 1538.5, redesignating subdivision (a) as (a)(1) and adding (a)(2), which provides: "A motion pursuant to paragraph (1) shall be made in writing and accompanied by a memorandum of points and authorities . . . [which] shall set forth *the factual basis and the legal authorities* that demonstrate why the motion should be granted." (Stats. 1997, ch. 279, § 3, italics added.) This amendment was one among many that relate primarily to the timing of a motion to suppress. (Legis. Counsel's Dig., Sen. Bill No. 123 (1997-1998 Reg. Sess.).) Therefore, the amendment has no direct bearing on the issue we decide here. Moreover, the amendment merely begs the question: In setting forth "the factual basis and the legal authorities" that support a motion to suppress, how specific must defendants be?

Consistent with section 1538.5, subdivision (a)(2), we hold that when defendants move to suppress evidence, they must set forth the factual and legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant. The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification. (*Wilder, supra*, 92 Cal.App.3d at pp. 96-97.) Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal. "[T]he scope of issues upon review must be limited to those raised during argument . . . . This is an elemental matter of fairness in giving each of the parties an opportunity adequately to litigate the facts and inferences relating to the adverse party's contentions." (*Manning, supra*, 33 Cal.App.3d at p. 601.)

■ With these principles in mind, we turn to the facts of this case. Defendant here moved to suppress evidence that Deputy Hunt seized from closed leather bags found in defendant's truck. In his moving papers, defendant argued that the police lacked probable cause to stop his truck, and that they had no policy governing inventory searches. Defendant thus *anticipated* the prosecution's justifications for the warrantless search of his truck and asserted inadequacies in those justifications. Defendant skipped the steps of first asserting a warrantless search, then waiting for the prosecution to justify the search, and only then challenging the justifications.

We see nothing wrong with this collapsed procedure, which cut to the heart of the issue without wasting the court's time. If defendants can anticipate the justifications the prosecution will offer, and the primary basis for the motion to suppress is the inadequacy of those justifications, then they should state those inadequacies in their initial moving papers and expedite resolution of the issue. (See, e.g., *Coleman, supra*, 229 Cal.App.3d at p. 324.) But in the case of a warrantless search or seizure, defendants are not *required* to anticipate the prosecution's justifications. Law enforcement personnel, not defendants, are in the best position to know what justification, if any, they had for proceeding without a warrant. Therefore, defendants who do not know, and hesitate to guess, what justification the prosecution might offer can simply await the prosecution's argument and evidence, and then respond with specific objections. (Cf. § 1538.5, subd. (h).)

On the other hand, in cases such as this one in which the defendant has anticipated and attacked the prosecution's justifications, the prosecution should avoid the "trap" of simply responding to the defendant's arguments and then resting. (*Wilder, supra*, 92 Cal.App.3d at p. 97.) The prosecution

has the burden of proving a justification for a warrantless search or seizure, not merely refuting the defendant's arguments for why its justification is inadequate. (*Ibid.*; see also *Palmquist, supra,* 123 Cal.App.3d at p. 12, fn. 7.)

Here, the prosecution justified the warrantless search of defendant's truck by asserting (1) the search was incident to a lawful arrest of defendant (see *Knowles* v. *Iowa* (1998) 525 U.S. 113, __ [119 S.Ct. 484, 487-488, 142 L.Ed.2d 492]; *New York* v. *Belton* (1981) 453 U.S. 454, 460-461 [101 S.Ct. 2860, 2864-2865, 69 L.Ed.2d 768]), and (2) the police were taking an inventory of the truck. As noted, defendant correctly anticipated both justifications, and, with respect to the second justification, which is at issue here, his trial court brief adequately put the prosecution on notice that it had to prove a policy specifically governing the opening of closed containers.

First, the brief expressly asserted that "the Tuolumne County Sheriff's Office has no written policy or procedure for inventory searches." Arguably, that assertion alone was sufficient to raise the closed-container issue. The brief made express reference to a "policy," and United States Supreme Court precedent made clear to the prosecution what elements that policy had to include. Specifically, because an inventory search "must not be a ruse for a general rummaging," the prosecution had to prove the existence of a "policy or practice" governing Deputy Hunt's decision to open closed containers. (*Wells, supra,* 495 U.S. at p. 4 [110 S.Ct. at p. 1635].) Furthermore, if Hunt was truly following a policy, not searching for drugs, when he decided to open the leather bags in defendant's truck, then he would have cited this policy when he explained to the prosecuting attorney his reasons for opening the bags without a warrant. Therefore, the prosecution cannot credibly claim to have been unaware that defendant's reference to a "policy" meant a policy governing the opening of closed containers.

Second, defendant cited and quoted from *Wells* as follows: ". . . Florida Highway Patrol had no policy whatever *with respect to the opening of closed containers* encountered during an inventory search. We hold that absent *such a policy,* the instant search was not sufficiently regulated to satisfy the Fourth Amendment . . . ." (*Wells, supra,* 495 U.S. at pp. 4-5 [110 S.Ct. at p. 1635], italics added.) Thus, defendant's motion made clear to the prosecution that it would have to prove not just any policy, but, more specifically, a policy governing Deputy Hunt's decision to open the leather bags.

Nor do we accept the Attorney General's assertion that defense counsel's oral argument at the hearing on the motion to suppress somehow conceded the issue of whether the police had a policy governing the opening of closed containers. First, defense counsel did not expressly concede the issue.

Counsel was of course free to focus his oral argument on one aspect of his motion and not another. Therefore, we find no significance in the fact that defense counsel did not specifically discuss the issue. Second, defense counsel *did* specifically refer to the inadequacy of the inventory search. Therefore, counsel did not ignore the issue altogether. Third, defense counsel's argument came *after* the prosecution presented evidence. Therefore, nothing in that argument can explain the gap in the prosecution's evidence. And fourth, the court abruptly interrupted defense counsel's argument in order to make its ruling. Therefore, we do not know what additional arguments defense counsel might have made.

Finally, although the prosecution must always prove the existence of a policy supporting an inventory search (*Wells, supra,* 495 U.S. at pp. 4-5 [110 S.Ct. at p. 1635]; *Bertine, supra,* 479 U.S. at p. 374, fn. 6 [107 S.Ct. at p. 742]), the facts of this case underscore forcefully the reason behind this rule. Deputy Hunt was surveilling defendant on suspicion of drug-related offenses and had called Deputy Oliver for assistance before defendant made the right turn without signaling. Deputy Hunt was likely looking for an opportunity to search defendant's truck. If he and Oliver truly intended to take an inventory pursuant to a preexisting policy or practice rather than to search for drugs, why did they fail to complete the inventory? Why, when they found what they assumed to be drugs, did their need to inventory defendant's truck mysteriously evaporate? Having found the drugs, the police still needed to tow the truck, but apparently they were no longer very concerned about following policy. The inference is strong that they were never very concerned about following policy; Hunt opened the leather bags, not because he wanted to take an inventory pursuant to a preexisting policy, but because he suspected defendant of drug possession and wanted an excuse to "rummag[e]" for evidence. (*Wells, supra,* 495 U.S. at p. 4 [110 S.Ct. at p. 1635].)

Because of the risk that an inventory search will be "a ruse for a general rummaging," a risk that this case particularly exemplifies, a valid inventory search must adhere to a preexisting policy or practice. (*Wells, supra,* 495 U.S. at p. 4 [110 S.Ct. at p. 1635].) This rule may require the prosecution to prove more than the existence of some general policy authorizing inventory searches; when relevant, the prosecution must also prove a policy or practice governing the opening of closed containers encountered during an inventory search. (*Id.* at pp. 4-5 [110 S.Ct. at p. 1635].) Here, by raising the question whether the inventory search was pursuant to a preexisting policy and by quoting from *Wells,* defendant adequately put the prosecution on notice as to the specifics of the policy it needed to prove. Nevertheless, the prosecution failed to meet its burden.

The Court of Appeal erred when it concluded that defendant had waived the issue of whether the opening of the leather bags was pursuant to a policy

or practice. Defendant did not waive that issue, and the prosecution did not prove an adequate policy.

### DISPOSITION

The judgment of the Court of Appeal is reversed.

George, C. J., Mosk, J., Kennard, J., Baxter, J., Werdegar, J., and Brown, J., concurred.

Appellant's petition for a rehearing was denied May 12, 1999, and the opinion was modified to read as printed above.