Filed 4/11/23 P. v. Raya CA5

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F083571 |
| Plaintiff and Respondent, | (Super. Ct. No. SF020428A) |
| v. | |
| SALVADOR ARIE RAYA, | **MODIFICATION OF OPINION AND DENIAL OF REHEARING [NO CHANGE IN JUDGMENT]** |
| Defendant and Appellant. | |

**THE COURT:**

It is ordered that the opinion herein filed on March 17, 2023, be modified as follows:

1.      On page 3, the paragraph beginning with "When Nakabayashi finally …," is deleted and replaced with:

When Nakabayashi finally engaged with the driver, who he identified as defendant during the hearing, he asked defendant to provide his license, registration, and insurance. Defendant responded to this request stating he did not have his actual license with him but had a copy. Defendant further explained that he did not have the vehicle registration with his name on it yet, as he had just purchased the vehicle. Defendant then turned to his passenger seat and produced two documents which appear to be related to the vehicle's registration under someone else's name. Nakabayashi testified he noticed defendant making an exaggerated movement toward the front passenger seat while retrieving the documents. In the body camera footage, we also see defendant show Nakabayashi an image on his cell phone that he states is a picture of his driver's license. Nakabayashi then asks defendant to read the license number out loud so he can write it down. Defendant never provided any proof of insurance.

2.     On pages 3 and 4, the paragraph beginning with "After obtaining this information …," is deleted and replaced with:

After obtaining this information, Nakabayashi returned to his vehicle and conducted a records check on his computer. During this search, Nakabayashi discovered defendant had prior arrests for operating a "chop shop" and a firearm related charge. Nakabayashi also was able to obtain a Vehicle Identification Number (VIN) for the vehicle during the records check. Nakabayashi then decided to check the VIN on the actual vehicle because based on his training and experience he was aware that "chop shop" operators often "switch or swap VINs." Additional facts that appeared to influence Nakabayashi to conduct the search for the VIN were that the vehicle defendant was driving appeared to be spray painted and was a Honda from the 1990's which, again based on his experience, he knew to be the most commonly stolen vehicle in Kern County.

3.     On page 4, the paragraph beginning with "Nakabayashi then started …," is deleted and replaced with the following:

Nakabayashi then started to search the vehicle by opening the driver side door and searching in that area. In his testimony, Nakabayashi testified he was able to locate matching VINs on the dashboard, the driver side door, and under the hood. While Nakabayashi was looking under the hood for another VIN, defendant started questioning him about what he was looking for and made a comment about being previously arrested for a "chop shop." Nakabayashi told defendant that was why he was looking for another VIN, and to verify it had not been swapped. After closing the hood of the vehicle, Nakabayashi moved to the passenger side door and opened it. Nakabayashi found two firearms on the front passenger seat under a bag and the papers defendant had gone through to produce the registration documents. Defendant was handcuffed and placed in the back of the patrol vehicle.

4.     On page 10, in the paragraph beginning with "Again, the existence …," the fourth sentence is deleted and replaced with the following:

When Nakabayashi finally approached defendant and asked him to provide his license, registration, and insurance, defendant produced a photocopy of his license on a cell phone, registration documents in another person's name, and no proof of insurance.

5.     On pages 10 and 11, the paragraph beginning with "Nakabayashi then turned …," is deleted and replaced with the following:

Nakabayashi then moved to the passenger side door, which he had earlier testified was another location where a VIN could be found. Eventually, Nakabayashi turned his attention to the passenger seat in the

2.

vehicle where defendant had turned to retrieve the vehicle registration documents. While looking through the materials on this seat, the video of Nakabayashi's body camera reveals a seat covered in a mess of papers and other materials. We believe the progression of these events, as they unfolded, provided the level of probable cause necessary to justify Nakabayashi's continuing search for a matching VIN and other documents related to ownership of the vehicle. This search continued to the passenger seat, where defendant had previously retrieved the registration documents from, and resulted in the discovery of the two firearms under all the papers and other materials piled on that passenger seat. The search conducted by Nakabayashi was supported by probable cause and did not violate defendant's Fourth Amendment rights.

6. On page 11, after the heading under section I.D. titled **The Availability of the Good Faith Exception**, the two paragraphs shall be deleted in their entirety and replaced with the following:

Because it is unnecessary to the overall result in this case, we decline to address the argument raised by the People that Nakabayashi may have been acting in good faith when searching the interior of the vehicle, in reliance on the standards set out in *People v. Lopez*, *supra*, 8 Cal.5th 353, and *In re Arturo D.*, *supra*, 27 Cal.4th 60. We do note, however, that the decision in *Lopez* did not overturn the authority to conduct searches for registration documents or other proof of ownership when appropriate. (*People v. Lopez, supra,* 8 Cal.5th, at p. 360, 381 [overturning only the validity of a traffic-stop identification-search, previously discussed in *In re Arturo D., supra,* 27 Cal.4th 60.)

This modification does not effect a change in the judgment.

The petition for rehearing filed by appellant on April 4, 2023, is denied. The petition for rehearing filed by respondent on March 28, 2023, is denied.

FRANSON, A.P.J.

WE CONCUR:

MEEHAN, J.

SNAUFFER, J.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FIFTH APPELLATE DISTRICT**

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>SALVADOR ARIE RAYA,<br><br>    Defendant and Appellant. | F083571<br><br>(Super. Ct. No. SF020428A)<br><br>**OPINION** |

**THE COURT**[*]

APPEAL from an order of the Superior Court of Kern County.  Colette M. Humphrey, Judge.

Matthew A. Lopas, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Franson, Acting P. J., Meehan, J. and Snauffer, J.

Defendant Salvador Arie Raya challenges the trial court's decision to deny his motion to suppress evidence following a traffic stop. Our review of the transcript of the hearing on defendant's motion to suppress, and all the evidence submitted during that hearing, leads us to conclude the trial court's denial of the motion is supported by the record and constitutional standards expressed in the law.

## PROCEDURAL SUMMARY

On June 20, 2021, an information was filed charging defendant with unlawfully carrying a loaded firearm on his person, or in a vehicle, in a public place or on a public street, without being the registered owner of the firearm (Pen. Code,[1] § 25850, subd. (c)(6), a felony; count 1), and unlawfully concealing in a vehicle under his control a firearm (§ 25400, subd. (a)(1), a misdemeanor; count 2).

On September 2, 2021, defendant filed a motion to suppress evidence obtained during a traffic enforcement stop. The motion was denied on October 19, 2021. Following the ruling on the motion to suppress, defendant entered a plea of no contest to counts 1 and 2 as alleged in the information.

On November 17, 2021, defendant was placed on probation for a period of two years with the condition that he serve 180 days for count 1 in the custody of the Kern County Sheriff. On count 2, probation was denied, but defendant received an additional sentence of 180 days, which was to be served concurrently with the sentence for count 1.

Defendant filed his notice of appeal challenging the denial of his motion to suppress on November 18, 2021.

## FACTUAL SUMMARY

Deputy Bryan Nakabayashi testified that on May 7, 2021, he was patrolling the 500 block of "F" Street in Wasco when he noticed a vehicle missing a front license plate and decided to execute a traffic stop. However, before talking to the driver, Nakabayashi

---

[1] All further statutory references are to the Penal Code, unless otherwise specified.

checked the back license plate number on the vehicle and discovered it had been reported stolen. Nakabayashi's body camera footage, which was admitted into evidence as Exhibit 1, reveals he told another deputy who was also at the scene that when he first saw defendant's vehicle, he suspected it was spray painted, which was common for stolen vehicles. Nakabayashi stated this was the reason he checked the license plate number before approaching defendant.

When Nakabayashi finally engaged with the driver, who he identified as defendant during the hearing, he asked defendant to provide his license, registration, and insurance. Defendant responded to this request stating he did not have his actual license with him but had a copy. Defendant further explained that he did not have the vehicle registration with his name on it yet, as he had just purchased the vehicle. Defendant then turned to his passenger seat where there were some papers and produced the photocopy of his license and a registration for the vehicle with someone else's name on it. Nakabayashi testified he noticed defendant making an exaggerated movement toward the front passenger seat while retrieving the documents. Defendant never provided any proof of insurance.

After obtaining this information, Nakabayashi returned to his vehicle and conducted a records check on his computer. During this search, Nakabayashi discovered defendant had prior arrests for operating a "chop shop" and a firearm related charge. Based on this information, Nakabayashi decided to check the Vehicle Identification Number (VIN) on the vehicle. Nakabayashi explained that based on his training and experience he was aware that "chop shop" operators often "switch or swap VINs." An additional fact that appeared to influence Nakabayashi to conduct the search for the VIN was that the vehicle defendant was driving was a Honda from the 1990's which, again based on his experience, he knew to be the most commonly stolen vehicle in Kern County.

Before starting the search, Nakabayashi's body camera video shows him putting on gloves as he tells another deputy that he is going to pat down defendant before searching for the VIN because defendant has a prior arrest for an unlawful firearm. Nakabayashi then approached the vehicle, told defendant to get out of the vehicle, and patted him down. Defendant started to become agitated, asking many questions about why he was being searched. Defendant was then told to sit on the sidewalk while the search for the VIN was conducted. Defendant was not handcuffed at this point.

Nakabayashi then started to search the vehicle by opening the driver side door and searching in that area. While Nakabayashi was looking under the hood for another VIN, defendant started questioning him about what he was looking for and made a comment about being previously arrested for a "chop shop." Nakabayashi told defendant that was why he was looking for another VIN, and to verify it had not been swapped. After closing the hood of the vehicle, Nakabayashi moved to the passenger side door and opened it. Nakabayashi found two firearms on the front passenger seat under a bag and the papers defendant had gone through to produce the photocopy of his license and the registration. Defendant was handcuffed and placed in the back of the patrol vehicle.

During the hearing when asked why he searched the interior of the vehicle when he said his purpose was to look for a VIN, Nakabayashi explained:

> "There are vehicle VIN numbers on the dash, on the dashboard. There are sometimes underneath the hood, near the firewall of the vehicle. There's also vehicle VIN stickers that are located on the insides of the doors. As well as VIN stickers in various places on parts of the vehicle like the inside of the trunk."

Nakabayashi further explained that when he moved to the front passenger side of the vehicle, he was still looking for the vehicle's VIN and defendant's license, current insurance, and registration documents, and that was why he lifted the papers and a bag on the front passenger seat, exposing the firearms.

4.

Next to testify was Tammy Olinger, who works in the administrative offices of the Kern County Sheriff's Department. Olinger testified she is responsible for maintaining dispatch records which are created for deputies when they call in to conduct a search for information. Olinger is specifically responsible for pulling audio and logs when needed. Olinger explained the logs are created when officers call in to the dispatch staff who then create the logs by typing in the information they receive. Olinger then authenticated the log generated for May 7, 2021, when Nakabayashi called in to dispatch during the traffic stop involving defendant. This log was admitted into evidence as Exhibit 2. The log specifically showed that after Nakabayashi made an inquiry, the vehicle defendant was driving when stopped showed up as a recovered stolen vehicle, and that the license plate on the vehicle was considered stolen.

## DISCUSSION

### I. The Search of the Vehicle Was Appropriate

#### A. The Standard of Review

Warrantless searches are presumptively unreasonable. (*People v. Williams* (1999) 20 Cal.4th 119, 130 (*Williams*).) When the search lacks a warrant, the moving party's initial burden is to simply establish the absence of a warrant. (*Ibid*.) "The burden then shifts to the prosecution to justify the warrantless search." (*People v. Marquez* (2019) 31 Cal.App.5th 402, 409, citing *Williams*, *supra*, at p. 127.) "The prosecution must prove by a preponderance of the evidence that the search falls within an exception to the Fourth Amendment warrant requirement." (*Marquez*, at p. 409.)

A traffic stop is considered lawful when the facts and circumstances surrounding the stop cause the officer to have a reasonable suspicion the driver violated the Vehicle Code. (*People v. Nice* (2016) 247 Cal.App.4th 928, 937–938.) Furthermore, an investigatory detention by police is reasonable under the Fourth Amendment, and therefore legal, "when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective

5.

manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.) The detention should "be temporary and last no longer than is necessary to effectuate the purpose of the stop." (*Florida v. Royer* (1983) 460 U.S. 491, 500.) If, however, when challenging the search, a defendant has a specific argument other than just the lack of a warrant as to why the search was unreasonable, that argument must be made in the motion to suppress to give the People an opportunity to address that specific point in the trial court and not wait for the appeal. (*Williams*, *supra*, 20 Cal.4th at p. 130.)

When reviewing a ruling on a motion to suppress, " ' "we defer to the superior court's express and implied factual findings if they are supported by substantial evidence, [but] we exercise our independent judgment in determining the legality of a search on the facts so found." ' " (*People v. Tully* (2012) 54 Cal.4th 952, 979.) " 'On appeal we consider the correctness of the trial court's ruling *itself*, not the correctness of the trial court's *reasons* or reaching its decision.' " (*People v. Jimenez* (2015) 242 Cal.App.4th 1337, 1360.)

Of relevance to this case, we note the decision in *People v. Lopez* (2019) 8 Cal.5th 353 (*Lopez*), in which our Supreme Court considered the issue of a warrantless search of a person solely to obtain evidence of his or her identity, in light of *Arizona v. Gant* (2009) 556 U.S. 332. In *Gant*, the United States Supreme Court was specifically dealing with the search of a vehicle incident to an arrest that had already occurred. The *Gant* court explored the permissible scope of a warrantless automobile search and eventually held:

> "[p]olice may search a vehicle incident to a recent occupant's arrest only if the arrestee is within reaching distance of the passenger compartment at the time of the search or it is reasonable to believe the vehicle contains evidence of the offense of arrest. When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Arizona v. Gant*, *supra*, 556 U.S. at p. 351.)

Following the decision in *Gant*, our own Supreme Court reevaluated its own language in the prior case of *In re Arturo D.* (2002) 27 Cal.4th 60, where the court stated a limited warrantless search was permitted in "the context of a valid traffic stop during which a driver fails to produce the required automobile registration, driver's license, or identification documentation upon an officer's proper demand." (*Id*. at p. 68.) While evaluating the holding in *Gant* and considering the facts before the court, the *Lopez* court concluded "the Fourth Amendment does not contain an exception to the warrant requirement for searches to locate a *driver's identification* following a traffic stop." (*Lopez*, *supra*, 8 Cal.5th at p. 381, emphasis added.) The holding in *Lopez* has yet to be extended to searches for automobile registration, insurance, or a VIN, which go to the question of who owns the vehicle. (See LaFave, Search & Seizure: A Treatise On The Fourth Amendment (6th ed. Oct. 2022 update) § 7.4(d).)

At the beginning of the hearing held on October 15, 2021, on defendant's motion to suppress, the parties agreed that the search at issue was conducted without a warrant. At this point, therefore, the burden shifted to the People to prove by a preponderance of the evidence that the search conducted by Nakabayashi came within an exception to the Fourth Amendment requirement for a warrant.

**B.    Defendant Forfeited the Right to Argue the Search Constituted a Prolonged Detention**

In his opening brief, defendant argues the constitutionality of the search conducted by Nakabayashi was in doubt because it was unjustifiably prolonged. This was the first time defendant raised this specific argument in this matter. The People now contend defendant has forfeited the opportunity to raise this specific argument on appeal. We note, defendant did not address the issue of forfeiture in his reply brief to this court.

At the trial court level, defendant submitted moving papers for his motion to suppress the evidence obtained during the traffic stop, citing the case of *Williams*, *supra*, 20 Cal.4th 119, for the proposition that:

7.

> "Although a defendant must—*at some point in the hearing on the motion*—put forth the specific grounds on which the motion is based, the Court concluded that he is not required to put these reasons forward in the initial moving papers. A defendant is obligated to specify 'the precise grounds for suppression' and 'the inadequacy of any justifications for the search or seizure' only after the prosecution offers a justification for the warrantless act."

However, when quoting this language, defendant failed to acknowledge additional language in *Williams* that went on to state:

> "Of course, if defendants have a specific argument *other than the lack of a warrant* as to why a warrantless search or seizure was unreasonable, they must specify that argument as part of their motion to suppress and give the prosecution an opportunity to offer evidence on the point." (*Williams*, *supra*, 20 Cal.4th at p. 130.)

For instance, the *Williams* court noted a defendant could not wait for an appeal to raise the failure to comply with the knock and announce requirements of section 840 for the first time. (*Williams*, *supra*, 20 Cal.4th at p. 130.) Therefore, while the prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances, if a defendant sees "a critical gap in the prosecution's proof or a flaw in its legal analysis," an objection must be made on that basis, or the defendant will risk forfeiting the issue on appeal. (*Ibid*.)

At no point during the hearing on the motion to suppress in the trial court did defense counsel raise the argument that the search of defendant's vehicle was unjustifiably prolonged. Defendant has waived that specific issue here.

## C.     Probable Cause Existed For the Search

Again, in this case Nakabayashi decided to conduct a traffic stop when he noticed the vehicle defendant was driving was missing a front license plate. The body camera video entered as evidence in this matter also showed Nakabayashi had a concern the vehicle was stolen because it appeared to be spray painted and had a back license plate that was listed as being stolen. When taking the matter under submission, the trial court stated:

8.

"My initial reaction is to consider the totality of the circumstances. No front license plate, which clearly gave you—the deputy authority to stop the car. A stolen license plate on the back end of the Court—car. The defendant not producing registration, not producing a driver's license, which is another violation. Seems to me that the officer should be allowed to search the car. Because I think we have enough crimes involved there they could find evidence, but, in an abundance of caution, I'm going to take it under submission because I want to read this case[2] in more detail."

Without providing any further statement, the trial court denied the motion to suppress on October 19, 2021.

"Probable cause is a more demanding standard than mere reasonable suspicion." (*People v. Lee* (2019) 40 Cal.App.5th 853, 862.) Probable cause requires " 'particularized suspicion.' " (*Texas v. Brown* (1983) 460 U.S. 730, 742.) "Probable cause to search exists when, based upon the totality of the circumstances …, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " (*People v. Farley* (2009) 46 Cal.4th 1053, 1098, quoting *Illinois v. Gates* (1983) 462 U.S. 213, 238; accord, *Ornelas v. United States* (1996) 517 U.S. 690, 696 ["the known facts and circumstances" must be "sufficient to warrant a man of reasonable prudence in the belief that contraband or evidence of a crime will be found"].)

Again, the trial court stated its belief Nakabayashi had the authority to stop defendant because of the lack of a front license plate. This is a violation of the Vehicle Code and a valid reason for the stop. (Veh. Code, §§ 5200, 5202.) The court then cited the stolen license plate in the back of the vehicle and defendant's inability to provide a valid license and registration as valid reasons for justifying a search of the vehicle under the "totality of the circumstances" standard. While substantial evidence supports each of these conclusions, it is our responsibility to consider the validity of the court's ruling justifying the search undertaken by Nakabayashi. (See *People v. Jimenez, supra*, 242 Cal.App.4th at p. 1360.)

---

[2] The "case" referenced by the trial court is *Lopez, supra*, 8 Cal.5th 353.

Again, the existence of probable cause is determined on the totality of the circumstances. (*People v. Farley*, *supra*, 46 Cal.4th at p. 1098.) The totality of the circumstances presented to Nakabayashi was the lack of a front license plate on a vehicle that appeared to be spray painted, a fact he understood through experience might suggest the vehicle was stolen. A quick check of the back license plate revealed the rear license plate to the vehicle was reported stolen. When Nakabayashi finally approached defendant and asked him to provide his license, registration, and insurance, defendant produced a photocopy of his license, a registration document in another person's name, and no proof of insurance. Nakabayashi returned to his vehicle and ran a computer check, from which he learned defendant had prior convictions for operating a "chop shop" and firearms related charges. At this point, Nakabayashi decided to conduct a search to confirm the vehicle's VIN and to pat down defendant due to the prior weapons charges on his record.

When Nakabayashi returned to the vehicle and asked defendant to get out so he could do a quick pat down search, defendant appeared agitated and started questioning why Nakabayashi needed to do this. After completing the pat down search, defendant was instructed to sit on the sidewalk, but was not handcuffed. Nakabayashi testified he started his search for additional information about who owned the vehicle and to verify the VIN, because he was aware through training and experience that those who operated "chop shops" would "switch or swap" out VIN numbers on stolen vehicles. When Nakabayashi was looking under the hood of the vehicle for another VIN, defendant started verbally challenging him again about what he was looking for. Unprovoked, defendant then acknowledged his prior for operating a "chop shop" and Nakabayashi responded noting that was why he was trying to confirm the accuracy of the VIN.

Nakabayashi then turned his attention to the passenger seat in the vehicle where defendant had turned to retrieve the photocopy of his license and the vehicle registration document. While looking through the materials on this seat, the video of Nakabayashi's

10.

body camera reveals a seat covered in a mess of papers and other materials. We believe the progression of these events, as they unfolded, provided the level of probable cause necessary to justify Nakabayashi's search, which ended at the passenger seat and resulted in the discovery of the two firearms under all the papers and other materials piled on that passenger seat. The search conducted by Nakabayashi was supported by probable cause and did not violate defendant's Fourth Amendment rights.

## D. The Availability of the Good Faith Exception

Although unnecessary to the overall result in this case, we find it necessary to address the argument raised by the People that Nakabayashi may have been acting in good faith when searching the interior of the vehicle while still looking for verification of defendant's identity. This argument points to the fact that the California Supreme Court overruled its holding in the earlier case of *Arturo D.*, *supra*, 27 Cal.4th 60, stating, "the Fourth Amendment does not contain an exception to the warrant requirement for searches to locate a driver's identification following a traffic stop." (*Lopez*, *supra*, 8 Cal.5th at p. 381.)

We believe such an argument was unreasonable at the time it was made as *In re Arturo D.* had been overruled on the issue of searches for identity over 18 months before the search occurred in this case.[3] We would expect a law enforcement officer who regularly conducts vehicle stops that could lead to a search would receive regular training on changes in the law that potentially impact the validity of those searches. The 18-month period here exceeds what we would consider a reasonable period of time for such training to occur justifying the use of the good faith exception expressed in *Davis v. United States* (2011) 564 U.S. 229, 231 [holding the exclusionary rule does not apply

---

[3] *Lopez* was decided on November 25, 2019, while the search at issue in this case occurred on May 7, 2021.

"when the police conduct a search in compliance with binding precedent that is later overruled"].

## **<u>DISPOSITION</u>**

The order denying defendant's motion to suppress evidence is affirmed. The judgment is also affirmed.