Filed 6/10/15  P. v. Tidwell CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, | B256885 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA422603) |
| v. | |
| ANTHONY TROY TIDWELL, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Ronald H. Rose, Judge.  Reversed and remanded with directions.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald Engler, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, James William Bilderback  II and Alene M. Games, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Police officers conducted a warrantless search of defendant-appellant Anthony Tidwell's home and found a shotgun.  Because Tidwell had previously been convicted of a felony, such possession violated Penal Code section 29800, subdivision (a)(i).[1]  The officers' search was based on consulting a computerized law enforcement database indicating Tidwell was on probation and subject to a warrantless search condition.  Tidwell told the officers repeatedly that he was not on probation.  The database was wrong; Tidwell's probation had ended 27 months before.  Because the prosecution offered no evidence of the reason for the database error, and thus, no basis for why the officers' reliance on the database was objectively reasonable, it failed to satisfy its burden of proof.  Accordingly, Tidwell's motion to suppress the seized evidence should have been granted.  We reverse and remand with directions.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 14, 2014, Los Angeles Police Officer Sean Schneider and his partner were on patrol in downtown Los Angeles.  At approximately 7:00 p.m., they saw five or six people congregating in front of an apartment complex on South Broadway.  The officers pulled up, got out of the patrol car, approached the group and asked each person separately if he or she lived at the apartment complex.  Tidwell, who was part of the group, told the officers he lived in the apartment complex, gave his name and said he had a prior arrest.  Tidwell was unable to produce any written identification showing his address.

With the information Tidwell had provided, Officer Schneider used the computer in his patrol car to verify Tidwell's address and his probation status.[2]  The computer's database system revealed Tidwell lived at a different address, was on probation and

---

[1]     Statutory references are to this code, unless otherwise indicated.

[2]     There was no testimony or documentary evidence identifying the source or custodian of these computerized records, although it is not disputed that it is a database controlled and relied upon by law enforcement.

subject to search terms. Schneider also confirmed that none of the other people in the group was on probation or parole. Tidwell repeatedly denied he was on probation. Schneider and his partner, however, did not believe him, relying instead on the database system. They took no further steps to verify Tidwell's probationary status.

The officers decided to conduct a probation search (a "roll back") of Tidwell's apartment. When they accompanied Tidwell to his apartment, a woman came out, identified herself as Tidwell's girlfriend, and confirmed that he lived there. After the officers indicated that they intended to search the apartment, she gave the officers the apartment keys, and they conducted a search for contraband. The officers found a 12-gauge shotgun, ammunition and a handgun magazine. Officer Schneider learned after the search that Tidwell was not on probation.

Tidwell moved to suppress the recovered shotgun, ammunition and related items pursuant to section 1538.5. The superior court denied the motion. Tidwell pleaded guilty to possession of a firearm by a felon (§ 29800, subd. (a)(1)) and was sentenced to a 16-month state prison term.

In his written motion to suppress, Tidwell cited *People v. Williams* (1999) 20 Cal.4th 119, 136 (*Williams*) and asserted that because the search of his apartment "occurred without a warrant," it was "presumptively illegal and must be justified by the prosecution." Tidwell presented no other factual or legal basis in the written motion. The record does not indicate that the People filed opposition. At the hearing, the People stipulated that there was no search or arrest warrant, and that Tidwell was not on probation on March 14, 2014.[3]

In the hearing on Tidwell's suppression motion, Officer Schneider testified as described above. Following his testimony, the trial court had him read into the record a portion of the printout of the computer database system he stated he had reviewed on the day of his encounter with Tidwell: "It says 'XCJ BA34869008. N. Tidwell, Anthony

---

[3] Also, at a pretrial hearing several weeks before the motion to suppress was heard, the court observed, and counsel for both parties recognized, that there was no search warrant and that the defendant's probationary period had expired before the arrest.

3

Troy, male Black, Black brown, six feet two, 180 pounds. Date of birth 02-12-71, address of 7907 South Hoover, Los Angeles, California. Adult probation information only expiration date. 09-10-14.'"

Tidwell neither testified nor introduced other evidence at the suppression hearing. No witness or other evidence was introduced about why Tidwell's probationary status in the database was incorrect. There was no dispute that the officers obtained their information about Tidwell's probationary status solely from a law enforcement database accessed directly from the computer in their patrol car.

Tidwell's counsel argued that the shotgun and other evidence should be suppressed because, among other reasons not pertinent here,[4] the officers unreasonably relied on the erroneous law enforcement database without confirming Tidwell's probationary status prior to conducting the search despite Tidwell's insistence he was not on probation. Counsel also maintained the search was unlawful because the "police can't rely upon incomplete or inaccurate information in their own records, that it's incumbent upon them to keep the official channels accurate in order to prevent these sorts of things form happening." Responding to the trial court's request for supporting case authority, defense counsel cited *People v. Ramirez* (1983) 34 Cal.3d 541, and explained the case held that "'[l]aw enforcement officials are collectively responsible for keeping official channels free of outdated incomplete and inaccurate warrant information.'"[5]

---

[4]    At the hearing, Tidwell also challenged the lawfulness of the detention, which he is not contesting on appeal.

[5]    In *People v. Ramirez, supra,* 34 Cal.3d at pages 543-544, an officer arrested the defendant after checking police computer records which mistakenly revealed that he had an outstanding arrest warrant when actually, the warrant had been recalled six months earlier. Drugs were discovered in the defendant's possession during a booking search. (*Id.* at p. 544.) The defendant's motion to suppress was denied. (*Ibid.*) The California Supreme Court held "that an arrest based solely on a recalled warrant is made without probable cause. The fruits of a search incident to such an arrest must, then, be suppressed. Although in this case the arresting officer no doubt acted in good faith reliance on the information communicated to him through 'official channels,' law enforcement officials are collectively responsible for keeping those channels free of

4

Tidwell's counsel then asked the prosecutor to stipulate that someone other than Tidwell was on probation in the case shown in the database system; Tidwell was never on probation in that case. The prosecutor declined, stating she would only stipulate Tidwell was not on probation on the day of the search. Tidwell's counsel told the court it was her understanding the prosecutor had agreed to stipulate to the testimony of Detective Callechio, who had been subpoenaed by the defense, but was currently unavailable. According to counsel, Callechio would have testified that an individual named Devon Johnson, not Tidwell, was on probation in the case shown in the computer record. Counsel asserted Tidwell's name had been entered into the computer database system with "the wrong case number;" and she asked the court to take judicial notice of Los Angeles Superior Court (LASC) case No. BA348690, the case for which Tidwell was purportedly on probation at the time of the search. The prosecutor disagreed with counsel's understanding of Callechio's proposed testimony, but she had no objection to the request for judicial notice. The prosecutor also stated "the other issue is that Devon Johnson used the name Anthony Tidwell. That's why Mr. Tidwell's name comes up." Thus, no evidence was introduced as to why the database erroneously indicated that Tidwell was on probation when the officers reviewed it.

The trial court took judicial notice of the court file in LASC case No. BA348690 indicating that in December 2008, Tidwell was placed on three-years of probation during which he was to "submit his person and property to search and seizure at any time of the day or night by any probation officer or other peace officer with or without a warrant, probable cause or reasonable suspicion," and his probation expired on December 4, 2011. The court remarked, "so the record is clear as to what this is." Based on the file to which the court took judicial notice, and with no contradictory evidence by the prosecution,

outdated, incomplete, and inaccurate warrant information. That the police now rely on elaborate computerized data processing systems to catalogue and dispatch incriminating information enhances rather than diminishes that responsibility." (*Id*. at p. 552.) During the hearing on Tidwell's suppression motion, there was no discussion about more recent authorities that address whether police reliance on inaccurate records will trigger exclusion of evidence, particularly cases decided by the United States Supreme Court after *Ramirez*. (See fn. 6, *infra*.)

Tidwell's probation had terminated more than two years and three months before the date of the arrest.

In opposing the motion to suppress, the People argued that the officers acted in good faith in reasonably relying on the accuracy of the database system and were not obligated to believe Tidwell's claim that he was not on probation. The prosecution acknowledged there was a physical description of "Anthony Tidwell, a.k.a. Devon Johnson" on the lower portion of the computer printout that did not match that of the defendant presently in court. Nonetheless, the physical description of "Anthony Tidwell," as shown on the upper portion of the computer printout, and read into the record, matched that of the defendant and indicated he was on probation. The prosecutor asserted that it was this information that the officers properly relied upon in deciding to conduct the search.

The trial court denied Tidwell's suppression motion. The court reasoned that once Tidwell was validly detained, and the officers determined he was on probation, "[t]he issue becomes whether or not the search is illegal" because "the officers had [merely] run a computer check." In concluding the officers acted in good faith reliance on the computer database system, the court explained it "has the defendant's name. It has the case number that, in fact, has the defendant's name on it. And the computer check showed that he was [on] probation." The court noted what the officers had relied upon was "not an incomplete report," but "a computer check the officers rely on every day." The court concluded it was unaware of any case requiring an officer "to take additional steps such as making a phone call" to verify the probation status of a suspect in these circumstances, simply because the suspect has denied being on probation.

Tidwell later pleaded guilty to the firearm possession charge; he appeals the denial of his motion to suppress. He was sentenced to 16 months of imprisonment and various fines, assessments, and fees. His counsel informed us at oral argument that he has completed his term.

6

## DISCUSSION

The search conducted here was presumptively unreasonable because it was warrantless. (*People v. Williams* (1999) 20 Cal.4th 119, 127 (*Williams*) ["a warrantless search is presumptively unreasonable"].) The reason police nevertheless conducted the search was their reliance on a law enforcement database indicating that Tidwell was on probation and subject to search without a warrant. Because, however, that justification was erroneous, the search violated the Fourth Amendment. But an invalid search does not mean that evidence derived from it must be excluded at trial. In this case, whether the evidence should have been excluded depends on resolution of two issues: (1) whether objectively reasonable grounds existed for reliance on the law enforcement database, and (2) which party had the burden of proof on the issue of objective reasonableness.

### 1. *Standard of Review of Denial of the Suppression Motion*

In reviewing the denial of a motion to suppress evidence, we defer to the trial court's factual findings, express or implied, when supported by substantial evidence. (*People v. Tully* (2012) 54 Cal.4th 952, 979.) The power to judge credibility, weigh evidence and draw factual inferences is vested in the trial court. (*Ibid.*) However, in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. (*Ibid.*, *People v. Lomax* (2010) 49 Cal.4th 530, 563.) Whether relevant evidence obtained by assertedly unlawful means must be excluded is determined exclusively by deciding whether its suppression is mandated by the federal Constitution. (Cal. Const. art. I, § 28, subd. (f)(2); see *People v Schmitz* (2012) 55 Cal.4th 909, 916.)

7

## 2. *The Exclusionary Rule and the Good Faith Exception*

The purpose of the exclusionary rule is to deter police misconduct. The Fourth Amendment guarantees individuals the "right . . . to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . ." (U.S. Const., 4th Amend.) As the United States Supreme Court has explained, "our decisions establish an exclusionary rule that, when applicable, forbids the use of improperly obtained evidence at trial. [Citation.] We have stated that this judicially created rule is 'designed to safeguard Fourth Amendment rights generally through its deterrent effect.' [Citation.]" (*Herring v. United States* (2009) 555 U.S. 136, 139-140 [129 S.Ct. 695, 172 L.Ed.2d 496] (*Herring*).) "The fact that a Fourth Amendment violation occurred – *i.e.*, that a search or arrest was unreasonable – does not necessarily mean that the exclusionary rule applies." (*Id*. at p. 140.) Instead, application of the exclusionary rule is limited to those "unusual cases" in which the admission of illegally seized evidence would encourage law enforcement officers to engage in Fourth Amendment violations. (*United States v. Leon* (1984) 468 U.S. 897, 918 [104 S.Ct. 3405, 82 L.Ed.2d 677] (*Leon*).) The exclusionary rule applies when it results in appreciable deterrence: "we have focused on the efficacy of the rule in deterring Fourth Amendment violations in the future." (*Herring, supra,* 555 U.S. at p. 141.)

*Herring* elaborated on this deterrent rationale in a circumstance, similar to the case before us, in which an unlawful search was prompted by faulty police records. Bennie Herring went to the Coffee County, Alabama sheriff's department to retrieve property from an impounded vehicle. Because "Herring was no stranger to law enforcement" (*Herring, supra,* 555 U.S. at p. 137), an investigator asked the county's warrant clerk to check for any outstanding warrants for Herring's arrest. When the clerk said there were none, the investigator asked that she contact her counterpart in neighboring Dale County, who informed her that the county's database showed an active warrant for Herring. Based on this information, the investigator arrested Herring, searched him, and found an illegal firearm and methamphetamine. But the information about the warrant was

mistaken. The Dale County sheriff's database had not been updated to reflect that the warrant had been recalled five months earlier. "For whatever reason, the information about the recall of the warrant for Herring did not appear in the database." (*Id.* at p.138.) The Dale County warrant clerk immediately notified the Coffee County clerk of the error, who contacted the investigator. But Herring had already been arrested. Herring's efforts to exclude the seized evidence were denied by lower courts. In reviewing his conviction, the Supreme Court assumed that the warrantless search violated the Fourth Amendment, but the issue was "whether the exclusionary rule should be applied." (*Id.* at p. 139.) Exclusion of the evidence, concluded the high court, was unwarranted when the Fourth Amendment violation at issue was caused by negligent police recordkeeping.

The Supreme Court explained that not only must the exclusionary rule effectively deter police misconduct, but that deterrent effect must outweigh the costs of letting guilty defendants go free. (*Herring, supra,* 555 U.S. at p. 141.) In assessing the benefits of excluding evidence, "[t]he extent to which the exclusionary rule is justified by these deterrence principles varies with the culpability of the law enforcement conduct." (*Id.* at p. 143.) Accordingly, said the high court, to "trigger the exclusionary rule, police conduct must be sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system. As laid out in our cases, the exclusionary rule serves to deter deliberate, reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Id.* at p. 144.)

The line of cases *Herring* referred to, in which culpability of law enforcement was examined, involved officers acting in what the Court deemed objectively reasonable reliance on subsequently invalidated warrants or statutes, or on an error by a court employee rather than police personnel. (*Herring, supra,* 555 U.S. at pp. 141-142.) The

high court stated: "We (perhaps confusingly) called this objectively reasonable reliance 'good faith.'" (*Id.* at p. 142.) [6]

In applying the good faith exception to the exclusionary rule to Herring's arrest, the Court stated that while not all recordkeeping errors by the police are immune from the exclusionary rule, in this case the conduct was "not so objectively culpable as to require exclusion." (*Herring, supra,* 555 U.S. at p. 146.) "If the police have been shown to be reckless in maintaining a warrant system, or to have knowingly made false entries to lay the groundwork for future false arrests, exclusion would certainly be justified under our cases should such misconduct cause a Fourth Amendment violation." (*Ibid.*) But the Court found no evidence that the errors in the Dale County warrant system were routine or widespread. The clerks involved testified they could remember no similar miscommunication occurring, and the investigator testified that he had no reason to question the information received about the warrant. (*Id.* at p. 147.) The Supreme Court concluded: "[W]hen police mistakes are the result of negligence such as that described here, rather than systemic error or reckless disregard of constitutional requirements, any marginal deterrence does not 'pay its way.'" (*Id.* at pp. 147-148.)

Therefore, when the police recordkeeping that leads to an unlawful search is an instance of "isolated negligence attenuated from the arrest," the exclusionary rule does not apply. (*Herring, supra,* 555 U.S. at p. 137.) But in contrast, the good faith exception to the exclusionary rule does not apply, and the unlawfully obtained evidence may be

---

[6]     The "good faith" terminology is confusing because the test is an objective one, not based on subjective intent: "The pertinent analysis of deterrence and culpability is objective, not an 'inquiry into the subjective awareness of arresting officers. [citation]'" (*Herring, supra,* 555 U.S. at p. 145.) The United States Supreme Court has applied the good faith exception to searches performed by police in objectively reasonable reliance on a subsequently invalidated warrant (*Leon, supra,* 468 U.S. at p. 922); a subsequently invalidated statute (*Illinois v. Krull* (1987) 480 U.S. 340 [107 S.Ct. 1160, 94 L.Ed.2d 364]); incorrect information in a judicially maintained computer database system of outstanding warrants (*Arizona v. Evans* (1995) 514 U.S 1 [115 S.Ct. 1185, 131 L.Ed.2d 34]); incorrect information in police-maintained computer database system of outstanding warrants (*Herring*, *supra*, 555 U.S. 135); and binding judicial precedent later overruled (*Davis v. United States* (2011) 564 U.S. __ [131 S.Ct. 2419, 180 L.Ed.2d 285].)

10

excluded, when law enforcement activity is "reckless, or grossly negligent conduct, or in some circumstances recurring or systemic negligence." (*Id.* at p. 144.) Thus, if police are "reckless in maintaining a warrant system," the exclusionary rule applies. (*Id.* at p. 146.) Based on the discussion of its precedents, the high court suggested that the good faith exception also does not apply to "routine" or "widespread" negligence. (*Id.* at pp. 146-147.)[7] Elsewhere the Court stated that the police negligence before it was distinguished from "systemic error." (*Id.* at p. 147.)

The question here is why the record system consulted by the officers failed to reveal that Tidwell's probation had ended 27 months before: Was this an error based on isolated negligence on the one hand – in which event the exclusionary rule would not apply – or on the other hand, gross negligence, systemic negligence, or reckless maintenance of the database, in which case the exclusionary rule could apply. No evidence was offered at the suppression hearing on this pivotal issue. The question then turns to which party bears the burden of proof.

### 3. *The Burden of Raising the Issue and the Burden of Proof*

The *Herring* decision did not discuss the respective burden on parties in a motion to exclude evidence garnered from a search tainted by faulty recordkeeping. The California Supreme Court has explained that in a motion to suppress, "the burden of raising an issue is distinct from the burden of proof. The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances." (*Williams, supra,* 20 Cal.4th at p. 130.)

---

7     The *Herring* court stated: "In a case where systemic errors were demonstrated, it might be reckless for officers to rely on an unreliable warrant system. See *Evans,* 514 U.S., at 17, 115 S.Ct. 1185 (O'Connor, J., concurring) ('Surely it would *not* be reasonable for the police to rely . . . on a recordkeeping system . . . that *routinely* leads to false arrests' (second emphasis added)); *Hudson,* 547 U.S., at 604, 126 S.Ct. 2159 (KENNEDY, J. concurring in part and concurring in judgment) ('If a *widespread pattern* of violations were shown . . . there would be reason for grave concern' (emphasis added))." (*Herring*, *supra*, 555 U.S. at pp.146-147.)

In *Williams,* our Supreme Court examined the specificity with which defendants must move to suppress evidence and the defendants' and the prosecution's respective burdens of proof under section 1538.5.  Preliminarily, the Court analyzed the "distinction between the burden of raising an issue and the burden of proof.  By 'burden of raising an issue,' we refer to a party's obligation to bring an issue to the attention of the trial court and the opposing party, with the consequence that, if the party fails to do so, it waives the right to raise the issue on appeal.  On the other hand, by 'burden of proof,' we refer to a party's 'obligation . . . to establish by evidence a requisite degree of belief concerning a fact.'"  (*Williams, supra,* 20 Cal.4th at p. 128.)

Applying these two types of burden to section 1538.5, the Supreme Court observed that although a defendant must inform the prosecution and court of the specific basis for his or her section 1538.5 motion, the defendant need not guess what justification the prosecution will offer for a contested warrantless search or seizure.  (*Williams, supra,* 20 Cal.4th at p. 129.)  *Williams* stated: "Because law enforcement personnel, not the defendant, made the decision to proceed without a warrant, they, not the defendant, are in the best position to know what justification, if any, they had for doing so."  (*Ibid.*)  A defendant meets the initial burden of raising the issue of an unreasonable warrantless search or seizure by "simply assert[ing] the absence of a warrant and mak[ing] a prima facie showing to support that assertion."  (*Id.* at p. 130.)  After the defendant sufficiently raises the issue, it is the prosecution's burden to justify a warrantless search or seizure. (*Ibid.*)  A defendant then must present any arguments as to why that justification is inadequate.  (*Ibid.*)  *Williams* emphasizes: "[T]he burden of raising an issue is distinct from the burden of proof.  The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances.  [Citations.]" (*Ibid*.)  The Supreme Court also noted: "In the interest of efficiency, however, defendants need not guess what justifications the prosecution will argue.  Instead, they can wait for the prosecution to present a justification.  Moreover, in specifying the inadequacy of the prosecution's justifications, defendants do not have to help the prosecution step-by-step to make its case.  The degree of specificity that is appropriate will depend on the legal

12

issue the defendant is raising and the surrounding circumstances.  Defendants need only be specific enough to give the prosecution and the court reasonable notice.  Defendants cannot, however, lay a trap for the prosecution by remaining completely silent until the appeal about issues the prosecution may have overlooked." (*Id.* at pp. 130-131.)  "The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id.* at p. 135.)

In *Williams* our Supreme Court defined the shifting burden between the defendant and the prosecution.  The defendant has an initial, limited burden, but the prosecution must prove justification for a warrantless search.  "Consistent with section 1538.5, subdivision (a)(2), we hold that when defendants move to suppress evidence, they must set forth the factual and legal bases for the motion, but they satisfy that obligation, at least in the first instance, by making a prima facie showing that the police acted without a warrant.  The prosecution then has the burden of proving some justification for the warrantless search or seizure, after which, defendants can respond by pointing out any inadequacies in that justification.  [Citation.]  Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal." (*Williams*, *supra*, 20 Cal.4th at p. 136.)  *Williams* stated: "[I]n the case of a warrantless search or seizure, defendants are not *required* to anticipate the prosecution's justifications.  Law enforcement personnel, not defendants, are in the best position to know what justification, if any, they had for proceeding without a warrant.  Therefore, defendants who do not know, and hesitate to guess, what justification the prosecution might offer can simply await the prosecution's argument and evidence, and then respond with specific objections." (*Id.* at p. 136.)  *Williams* noted that although a defendant should be allowed to file a written response to the prosecution's justification, the "defendant could also have waited until after the hearing and challenged the prosecution's proof of its justification, at which point a court should grant a continuance if necessary to allow the prosecution to offer additional evidence." (*Id.* at p. 134.)  *Williams* further noted that: "[T]he prosecution should avoid the 'trap' of simply

13

responding to the defendant's arguments and then resting. [Citation.] The prosecution has the burden of proving a justification for a warrantless search or seizure, not merely refuting the defendant's arguments for why its justification is inadequate. [Citations.]" (*Id.* at pp. 136-137.)

While the defendant has the burden of raising the issue, the prosecution has the burden of demonstrating that the good faith exception applies. Our Supreme Court explained this in another case in which faulty law enforcement recordkeeping engendered an invalid search. In *People v. Willis* (2002) 28 Cal.4th 22 (*Willis*), police officers consulted a "parole book" furnished by the Department of Corrections that indicated defendant Willis was on parole. Police, accompanied by a parole officer, conducted a warrantless search of Willis's motel room even though the defendant produced a certificate indicating he had been released from parole nine months earlier. The search turned up contraband, Willis's motion to exclude the evidence was denied, he was convicted, and appealed. Our Supreme Court reversed, holding that the good faith exception did not apply, and that the evidence should have been suppressed. The *Willis* court observed that the record was "sparse" as to the source of the error, and the prosecution speculated it could have been a Corrections Department data entry clerk. (*Id.* at pp. 35-36.) The *Willis* decision cited *Leon*, where the United States Supreme Court remarked that "the prosecution should ordinarily be able to establish objective good faith without substantial expenditure of judicial time." (*Leon, supra,* 468 U.S. at p. 924.) *Willis* stated: "Numerous courts, including this one, have cited this statement from *Leon* in holding that the government has the burden to prove facts warranting application of the good faith exception." (*Willis, supra,* 28 Cal.4th at p. 37.) Accordingly, our Supreme Court rejected the prosecution's contention that the defendant bore the burden of producing evidence on the reason for the parole record's inadequacy. Rather, stated the Supreme Court in *Willis*, the prosecution bears that burden: "Where, as here, the prosecution invokes the good faith exception, the government has 'the burden . . . to prove that exclusion of the evidence is not necessary because of [that] exception.' [Citation.] . . . Establishing that the source of the error acted objectively reasonably is

14

part of that burden." (*Id.* at p. 36.) While the United States Supreme Court decision in *Herring* has arguably redefined the type of law enforcement culpability that qualifies under the good faith exception, that case did not address the burden of proof. It is the prosecution that bears the burden of demonstrating that reliance on faulty law enforcement records is objectively reasonable. That aspect of the *Willis* holding is unaffected by *Herring*.

With these principles in mind, we turn to the record in this matter.

4.  *The Prosecution Failed To Meet Its Burden of Proving the Good Faith Exception Applied in this Case.*

In his written motion, Tidwell made a sufficiently specific showing that the search of his apartment was unreasonable by stating the officers acted without a warrant. (*People v. Williams, supra,* 20 Cal.4th at p. 136 [defendant satisfies basis for motion to suppress in the first instance by prima facie showing that police acted without a warrant].) Indeed, Tidwell cited *Williams*. At this point, the prosecution had fair notice of the basis for Tidwell's suppression motion and fair opportunity to present responsive evidence. (*Id.* at p. 135.) The prosecution then assumed the burden of proving justification for the presumptively unreasonable search; only after the prosecution asserted such justification was Tidwell required to identify "any inadequacies in that justification." (*Id.* at p. 136; see *People v. Schmitz* (2012) 55 Cal.4th 909, 915, fn. 4.)

In the suppression hearing here, Tidwell did more than merely establish that the search lacked a warrant. The parties stipulated that he was not on probation at the time the officers conducted the probation search, a fact known to all parties weeks before the suppression motion was heard. Tidwell's counsel then argued that the officers' reliance on an outdated or inaccurate record could not exempt the seized evidence from the exclusionary rule. Neither party explicitly invoked the *Herring* decision, however, and so the court was not presented with the authority for applying the proper legal standard. Nevertheless, the prosecution was placed on notice that the question was not merely whether the officers could rely on what they found on their computer database, but

15

whether the error was, on one hand, an instance of isolated negligence or, on the other hand, a systemic problem, gross negligence, or an "unreliable [ ] system" that "it might be reckless for officers to rely on." (*Herring, supra,* 555 U.S. at p. 146.) The prosecution offered no evidence at all on that point, and for that reason failed in its burden of proving a justification for a warrantless search, in this case, the good faith exception to the exclusionary rule. "The prosecution has the burden of proving a justification for a warrantless search or seizure, not merely refuting the defendant's arguments for why its justification is inadequate." (*Williams, supra,* 20 Cal.4th at pp. 136-137.) In a case in which law enforcement records are erroneous, the prosecution had the burden of "[e]stablishing that the source of the error acted objectively reasonably. . . ." (*Willis, supra,* 28 Cal.4th at p. 37.) Respondent contends that Tidwell failed adequately to frame the issue below. But Tidwell was not obliged to "help the prosecution step-by-step to make its case." (*Williams, supra*, 20 Cal.4th at p. 130.)

By failing to offer any facts concerning the source of the database error, the prosecution failed to meet its burden of justifying an exception to excluding improperly seized evidence. "The prosecution retains the burden of proving that the warrantless search or seizure was reasonable under the circumstances." (*Williams, supra,* 20 Cal.4th at p. 130.) In seeking to invoke the good faith exception, it could not rely solely on the mental state of the officers in the field. Tidwell's counsel argued that the "police can't rely upon incomplete or inaccurate information in their own records, that it's incumbent upon them to keep the official channels accurate in order to prevent these sorts of things from happening." Thus, Tidwell squarely presented the specific issue of the integrity of the law enforcement recordkeeping system.[8] In light of *Herring,* the prosecution then

---

[8]     In effect, Tidwell "collapsed the procedure," which the *Williams* court endorsed. (*Williams, supra,* 20 Cal.4th at p. 136.) That is, defendant did not wait until the prosecution justified the warrantless search by claiming it was a probationary search, at which point defendant would then assert he was not, contrary to the database, on probation. He "cut to the heart of the issue without wasting the court's time." (*Ibid.*) Tidwell argued in the hearing that the erroneous law enforcement database record did not justify the search.

16

had the burden of proving that objectively reasonable reliance provided an exception to the exclusionary rule, that is, the law enforcement database error involved isolated negligence, not, for instance, gross negligence or systemic negligence. (See also *Willis, supra,* 28 Cal.4th at pp. 36-37 ["Establishing that the source of the error acted objectively reasonably is part of [the] burden" of proving that exclusion is not necessary].)

Placing this burden on the prosecution is appropriate because "[l]aw enforcement personnel, not defendants, are in the best position to know what justification, if any, they had for proceeding without a warrant." (*Williams, supra,* 20 Cal.4th at p. 136.) In the suppression hearing here, it appeared that the prosecution was aware of a law enforcement witness who might have shed light on the error that ensnared Tidwell. Ordinarily, the burden of proof is allocated to the party with superior knowledge concerning the facts. (See Evid. Code, § 500, Law Rev. Comm. Comments [factors in allocating burden of proof include the "knowledge of the parties concerning the particular fact" and "the availability of the evidence to the parties"]; *McCormick on Evidence* (7th ed. 2013) § 337 [describing general rule when the facts with regard to an issue lie peculiarly in the knowledge of one party].) Here, law enforcement had full custody and control of the database in question, and also had access to the witnesses who could have explained the procedures regarding data entry, record management, and quality control. The prosecution also could have requested a continuance to marshal evidence on the reason for the records error, as *Williams* contemplates, but it did not do so. (See *Williams, supra,* 20 Cal.4th at p. 134 [defendant could have waited until after the hearing and challenged the prosecution's proof, at which point court should "grant a continuance if necessary to allow the prosecution to offer additional evidence"].)

Finally, the seriousness of the error in this case is a further reason to demand that law enforcement demonstrate objectively reasonable reliance on the source of the information. The database reflected that Tidwell was on probation when in fact his probationary period expired 27 months before. Tidwell's circumstance is far more Kafkaesque than the outdated warrant records in *Herring* [five months (see 555 U.S. at p. 138)] and erroneous parole records in *Willis* [nine months (see 28 Cal.4th at p. 27)].

17

An error that subjects a citizen to an unconstitutional search based on information more than two years old suggests reckless recordkeeping that may not be excused by the good faith doctrine. The prosecution had a duty to explain it. In this case there were also reasons why the police should have verified what they gleaned from the computer record. The physical description of Tidwell in part of the computer report did not match the individual they had before them, or the portion of the record the police did rely on. The address did not match, indicating the record was dated. Tidwell repeatedly denied being on probation. Ignoring these factors compounded the original, unexplained error and further undermines any claim that the search was justified by objectively reasonable reliance.

The prosecution failed to demonstrate the reason for the database error, and thus failed to meet its burden to demonstrate that an objectively reasonable basis – otherwise referred to as the good faith exception – excused the presumptively invalid search of Tidwell's home. The denial of Tidwell's motion to suppress was error.

## DISPOSITION

The judgment of conviction is reversed; Tidwell's guilty plea is vacated. The matter is remanded to the trial court with directions to reverse the order denying Tidwell's suppression motion, and grant Tidwell a new hearing on his motion to suppress consistent with this opinion, unless the People elect to dismiss the charge with prejudice.

IWASAKI, J.[*]

**We concur:**

**PERLUSS, P. J.**                    **ZELON, J.**

---

[*]Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.