Filed 9/8/16  P. v. Ford CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C080280 |
| Plaintiff and Respondent, | (Super. Ct. No. 14F08012) |
| v. | |
| MARKIMHASSON KUINTEZ FORD, | |
| Defendant and Appellant. | |

Following the denial of his motion to suppress evidence pursuant to Penal Code section 1538.5,[1] defendant Markimhasson Kuintez Ford pleaded no contest to being a felon in possession of a firearm.  (§ 29800, subd. (a)(1).)  He also admitted the allegation that he had committed a prior serious felony.  (§ 1192.7, subd. (c).)  The trial court sentenced defendant to two years eight months in prison.

---

[1] Undesignated statutory references are to the Penal Code.

1

On appeal defendant contends the trial court erred in denying his motion to suppress evidence. We conclude the trial court did not err, and therefore affirm the judgment.

## I. BACKGROUND

The facts are taken from the evidence presented at the hearing on defendant's motion to suppress.

A. *Prosecution Case*

At around 6:00 p.m. on November 30, 2014, Sacramento police officers Christopher Clatterbuck and Tony Yager were dispatched to the Motel 6 on 30th Street in Sacramento in response to a report of possible prostitution solicitation activity occurring in room 241.[2] The caller reported that there were two adult black males soliciting a girl for prostitution.

Officer Clatterbuck was very familiar with this motel, which he described as an active community policing location with lots of narcotics and prostitution-related calls and arrests. He explained that the motel was his "project," and that he was there on a daily basis conducting enforcement activities, responding to calls for service, making contacts with people, and performing probation and parole searches. On prior occasions, Officer Clatterbuck had assisted the motel owner in evicting tenants for prostitution-related activity. In such instances, the owners of the motel would ask the tenant to leave the property, typically with police officers standing by to facilitate the eviction. After an eviction, the tenant no longer had a right to be in the motel room.

Upon arriving at the motel, Officer Clatterbuck learned from management that Stephanie McGuire had rented room 241. Before Officer Clatterbuck went to McGuire's room, Officer Yager told him that he had seen a black male and a white

---

[2] Officer Clatterbuck was the only witness called by the People.

2

female leave the vicinity of the room. The officers agreed that Officer Clatterbuck would go to room 241, while Officer Yager would attempt to contact the black male.

When Officer Clatterbuck arrived at room 241, he noticed that the door was slightly open. He knocked and announced his presence, but no one responded. Based on the nature of the dispatch call and the report that there had been two black males in the room, and only one was seen leaving, Officer Clatterbuck pushed the door open to see if anyone was inside. From outside the door's threshold, Officer Clatterbuck observed various belongings inside the room, but did not see anyone inside.

Approximately 20 seconds after Officer Clatterbuck pushed the door open, McGuire appeared. After McGuire informed Officer Clatterbuck that she had rented room 241, Officer Clatterbuck explained why he was there and asked if they could go inside and talk. According to Officer Clatterbuck, McGuire consented to him entering the room, and the two went inside and discussed the reasons why he was at the motel.

Meanwhile, Officer Yager observed defendant near the motel. He made contact with defendant and asked him to come to McGuire's room to talk. When the two of them arrived at the room, defendant and McGuire informed the officers that they were boyfriend and girlfriend and that they had been dating for a few months. After speaking with defendant and McGuire, the officers determined that it was inconclusive whether any prostitution-related activity had taken place.

Nonetheless, motel management decided to terminate McGuire's tenancy and asked McGuire and defendant to leave. The officers remained outside McGuire's room to facilitate their departure. While McGuire and defendant packed their belongings, Officer Clatterbuck noticed that McGuire and defendant were acting nervous. They attempted to close the front door multiple times but the officers prevented them from doing so. Once the room was vacated, the officers conducted a search and found a loaded handgun between the mattress and the box spring.

3

*B.     Defense Case*

McGuire was the only witness who testified on behalf of defendant. McGuire stated that she had been staying at the motel for several days, and that defendant had stayed one or two nights and would come and go from the room. McGuire said there had been a party in her room on the night she was evicted, and that, after the party, she and defendant left the room. She stated that when the police arrived, she was downstairs with defendant. She further stated that when she returned to her room a few minutes later, she saw three police officers. She noted that one of the officers was "standing half in and half out of the door." This officer said, "Let's go in [the room] and talk," or "Let's talk in here." According to McGuire, she never agreed to go inside; instead, she followed the officer inside because she felt she had no option. During their conversation, the police officer asked McGuire how she acquired the money that was located in a jar on a table. McGuire said that her mother had given her the money. The officer subsequently seized the money.

When the officers informed McGuire and defendant that they had to leave, the two packed their belongings and left.[3] As they were leaving, McGuire told the officers that she and defendant had taken all of their belongings from the room. At the time McGuire and defendant vacated the room, McGuire had already paid for it.

*C.     Ruling on Motion to Suppress & Sentencing*

At the conclusion of the suppression hearing, the trial court denied defendant's motion to suppress evidence, finding that neither McGuire nor defendant had an expectation of privacy in room 241 after they vacated it. Following the denial of his motion to suppress, defendant pleaded no contest to being a felon in possession of a firearm. (§ 29800, subd. (a)(1).) He also admitted the allegation that he committed a

---

[3] Defendant remained outside room 241 until the officers advised him that he and McGuire had to vacate the room.

prior serious felony. (§ 1192.7, subd. (c).) The trial court sentenced defendant to two years eight months in prison.

Defendant filed a timely notice of appeal.

## II. DISCUSSION

Defendant contends the trial court erred in denying his motion to suppress evidence. We disagree.

"Our review of issues related to the suppression of evidence seized by the police is governed by federal constitutional standards." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1118.) "In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*Id.* at p. 1119.)

"The Fourth Amendment to the federal Constitution guarantees against unreasonable searches and seizures by law enforcement and other government officials." (*People v. Parson* (2008) 44 Cal.4th 332, 345 (*Parson*).) " '[I]n order to claim the protection of the Fourth Amendment, a defendant must demonstrate that he personally has an expectation of privacy in the place searched, and that his expectation is reasonable . . . .' " (*People v. Ayala* (2000) 23 Cal.4th 225, 255.) "Defendant bears the burden of showing a legitimate expectation of privacy. [Citation.] Among the factors to be considered are ' " 'whether the defendant has a [property or] possessory interest in the . . . place searched; whether he has the right to exclude others from that place; whether he has exhibited a subjective expectation that it would remain free from governmental invasion, whether he took normal precautions to maintain his privacy and whether he was legitimately on the premises.' " ' [Citation.]" (*People v. Roybal* (1998) 19 Cal.4th 481, 507.)

The Fourth Amendment's protection against unreasonable searches and seizures "extends to motel and hotel rooms in which the occupant has a reasonable expectation of privacy. [Citations.] It has long been settled, however, that a warrantless search and seizure involving abandoned property is not unlawful, because a person has no reasonable expectation of privacy in such property. [Citations.] Thus, 'when a day-to-day room guest of a hotel or motel departs without any intention of occupying the room any longer . . ., an inference arises that he has abandoned his tenancy. . . . This is so even though the guest leaves some of his personal belongings behind.' [Citations.]" (*Parson, supra*, 44 Cal.4th at p. 345.)

"[T]he intent to abandon [property] is determined by *objective* factors, not the defendant's subjective intent. ' "Abandonment is primarily a question of intent, and intent may be inferred from words, acts, and other objective facts. [Citations.] Abandonment [in the context of the Fourth Amendment] is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search." ' " (*People v. Daggs* (2005) 133 Cal.App.4th 361, 365-366, italics added.) "[P]roperty is abandoned when a defendant voluntarily discards it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination." (*Id.* at p. 365.) "The question whether property is abandoned is an issue of fact, and the court's finding must be upheld if supported by substantial evidence. [Citation.]" (*Ibid*.)

We conclude the trial court did not err in denying defendant's motion to suppress. Substantial evidence supports the trial court's determination that defendant had no expectation of privacy in the vacated motel room and any belongings left behind. The record discloses that defendant abandoned room 241 prior to the search of the room and discovery of the handgun. By leaving the room with the handgun inside, defendant relinquished his interest in the property such that he no longer retained a reasonable expectation of privacy in it at the time of the search. Accordingly, because defendant had

6

no reasonable expectation of privacy in room 241 after vacating it, the warrantless entry and search of the room did not violate the Fourth Amendment. Therefore, the trial court properly denied defendant's motion to suppress evidence.

We do not reach defendant's contention that the "abandonment doctrine" does not apply because he was illegally detained in violation of his Fourth Amendment rights. Defendant has forfeited this argument because he did not raise it below.[4] In response to the People's argument that the warrantless search was lawful because defendant did not have a reasonable expectation of privacy in the hotel room after it was vacated, defendant did not offer the argument he now raises on appeal. Instead, defendant argued that he had a legitimate expectation of privacy in the room. Accordingly, defendant has forfeited the issue on appeal. (See *People v. Williams* (1999) 20 Cal.4th 119, 130-136 [defendants who do not give the prosecution sufficient notice of the inadequacies in the prosecution's proposed justification for a warrantless search or seizure cannot raise the issue on appeal].)

---

[4] At our request, the parties submitted supplemental briefing on the question of whether defendant has forfeited his argument that the abandonment doctrine does not apply because he was illegally detained in violation of his Fourth Amendment rights.

## III.  DISPOSITION

The judgment is affirmed.


/S/

_____
RENNER, J.


We concur:


/S/

_____
DUARTE, Acting P. J.


/S/

_____
HOCH, J.

8