Filed 3/11/20

**CERTIFIED FOR PUBLICATION**

APPELLATE DIVISION OF THE SUPERIOR COURT

STATE OF CALIFORNIA, COUNTY OF SAN FRANCISCO

| | |
|---|---|
| THE PEOPLE, | APP-18-008503 |
| Plaintiff and Respondent, | (Super. Ct. No. 18016487) |
| v. | |
| ARSHIA CHALAK, | **OPINION** |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Francisco County, Robert M. Foley, Judge. (Retired judge of the Santa Clara Sup. Ct., assigned by the Chief Justice under art. VI, § 6 of the Cal. Const.) Reversed.

Erica G. Franklin, under appointment by the Appellate Division, for Defendant and Appellant.

Suzy Loftus, Interim District Attorney, Chesa Boudin, District Attorney, and Natalie B. Fuchs, Assistant District Attorney, for Plaintiff and Respondent.

_____

A jury convicted appellant of domestic battery. Appellant argues that the trial court committed reversible error when it denied his motion to suppress evidence. After considering the record, arguments, and applicable law, the judgment is REVERSED. Our reversal on this ground makes it unnecessary to reach appellant's arguments regarding testimonial statements, prosecutorial misconduct, and jury instructions.

## I.     FACTS AND PROCEDURAL HISTORY

On October 22, 2018, at about 1:30 p.m., San Francisco Police Department Officer Philip Leung drove to Macy's at 170 O'Farrell to investigate a report of domestic violence. Leung met Amyah S., who said that her ex-boyfriend hit her earlier that day. Amyah described her ex-boyfriend as a "mid-Eastern male, 6' tall, approximately 150 in weight, wearing a gray Nike jumpsuit and black slip-ons." Leung broadcasted the description with his pic radio. Dispatch also provided "a rough basic description." Amyah told Leung that her ex-boyfriend "is known to carry weapons, but . . . did not see any weapons on him today." Leung broadcasted the suspect may have a gun.

Leung's sergeant notified him that "they found a possible suspect." Between 20-60 minutes later, Leung drove Amyah to the suspect, appellant Arshia Chalak, who was at Mason and Geary, near Union Square. Appellant, wearing a black tracksuit, was handcuffed and surrounded by multiple police officers. Leung asked Amyah if the man in the black tracksuit was the person who hit her. Amyah, sitting in the front passenger seat of Leung's patrol vehicle, said that the man was not the one who hit her.

2

Appellant was not released. "[R]ather than being released, the officers fetched Mr. Chalak's phone." Leung called his sergeant and told him that Amyah did not identify appellant as the suspect. Officer Gonzalez walked up to Leung's patrol vehicle and told Leung the suspect's date of birth and name. Leung does not know how Gonzalez learned the suspect's date of birth or name.

Apparently not believing Amyah was being truthful about her identification, Leung asked Amyah to call her ex-boyfriend. She called twice. Officer Gonzalez told Leung that appellant's phone rang twice. An unknown officer took appellant to a police station for further investigation. Leung drove Amyah back to Macy's, where she told him that appellant was the man who hit her.

On October 23, 2018, appellant was charged by misdemeanor complaint with domestic battery (Pen. Code, § 243, subd. (e)(1); count 1). On October 25, 2018, appellant filed a motion to suppress evidence. On November 21, 2018, the trial court denied the motion. On December 3, 2018, a jury convicted appellant of count 1. Appellant timely appealed.

## II. DISCUSSION

### A. The trial court erred when it denied appellant's motion to suppress evidence.

"In reviewing a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings, express or implied, where supported by substantial evidence. [Citation.] And in determining whether, on the facts so found, the search was reasonable for purposes of the Fourth Amendment to the United

3

States Constitution, we exercise our independent judgment. [Citation.]" (*People v. Simon* (2016) 1 Cal.5th 98, 120.)

A defendant may move to suppress evidence on the ground that "[t]he search or seizure was unreasonable." (Pen. Code, § 1538, subd. (a)(1)(A).) A warrantless search or seizure is presumed to be unreasonable, and the prosecution bears the burden of demonstrating a legal justification for the search or seizure. (*People v. Williams* (1999) 20 Cal.4th 119, 127.)

"A detention is reasonable under the Fourth Amendment when the detaining officer can point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity." (*People v. Souza* (1994) 9 Cal.4th 224, 231.)

Officer Leung was not the detaining officer. The detaining officer did not testify at the suppression hearing—and his or her identity is unknown. Leung testified over objection that the detained suspect, appellant, matched the description provided by Amyah, except that appellant was wearing a black rather than a gray Nike jumpsuit. One could infer from these circumstances that whoever arrested appellant had heard Officer Leung's or dispatch's description of a suspect. However, nothing in the record establishes that the detaining officer had any information linking the person in the description to a crime. Thus, it cannot be said that the detaining officer possessed specific articulable facts demonstrating that appellant may have been involved in criminal activity.

This case is analogous to *Lockridge v. Superior Court* (1969) 275 Cal.App.2d 612 (*Lockridge*). In *Lockridge*, Officer Staub had probable cause to arrest a suspect named Roger. (*Id.*

at p. 618.)  Staub "contacted the radio dispatcher and asked him to broadcast a description of [Roger's] vehicle and request 'that it be stopped until the investigation could be completed.'" (*Id.* at pp. 618-619.)  Within a couple of hours, Roger was arrested in the vehicle that Staub described to the dispatcher.  (*Id.* at p. 615.)  The identity of the arresting officer and the circumstances of the arrest were not established at the suppression hearing.  "Unfortunately," the Court of Appeal noted, "we are confronted with a total failure of proof by the prosecution as to the circumstances surrounding Roger's arrest.  The record is devoid of any evidence as to what information was communicated to the arresting officer or officers, or, for that matter, who the arresting officer was." (*Id.* at p. 618.)  The Court of Appeal concluded that "[d]ue to the inadequacy of the present record, the arrest of Roger must be held to have been without probable cause[.]" (*Id.* at p. 619.)  "Under this state of the evidence, we are constrained to hold that the prosecution has failed to sustain its burden of proof that Roger's arrest without a warrant was based on probable cause[.]" (*Ibid.*)

Here, as in *Lockridge*, there was no evidence regarding the identity of the detaining officer, and no evidence that the detaining officer had information linking appellant to a crime.  Leung, the only witness at the suppression hearing, was not present when appellant was detained at gunpoint, nor was he present when appellant was searched and frisked for weapons.

Respondent argues that the detaining officer's testimony was unnecessary, because "[t]he People must present evidence that there was reasonable suspicion to detain, not that any particular officers had reasonable suspicion."  Respondent asserts that Leung's reasonable suspicion can be imputed to the

5

detaining officer through the collective knowledge doctrine. We find that the doctrine does not stretch that far.

Under the collective knowledge doctrine, we look to the collective knowledge of all officers involved in the criminal investigation even though not all of the information obtained by the investigating officers may have been communicated to the officer who actually undertakes the constitutionally challenged action. (*United States v. Ramirez* (9th Cir. 2007) 473 F.3d 1026, 1032.) "[A] detaining officer who is not personally aware of all the facts on which a reasonable suspicion might be based may nevertheless properly detain an individual on the basis of a direction or information transmitted by police officers who were personally aware of such facts." (*People v. Soun* (1995) 34 Cal.App.4th 1499, 1521; see *United States v. Shareef* (10th Cir. 1996) 100 F.3d 1491, 1503 ["The cases in which we have applied the 'collective knowledge' rule all have involved actual communication to the arresting officer of either facts or a conclusion constituting probable cause, or an arrest order."]; *United States v. Colon* (2d Cir. 2001) 250 F.3d 130, 135 ["The collective knowledge doctrine was developed in recognition of the fact that with large police departments and mobile defendants, an arresting officer might not be aware of all the underlying facts that provided probable cause or reasonable suspicion, but may nonetheless act reasonably in relying on information received by other law enforcement officials."].)

Two cases illustrate that the collective knowledge doctrine is not applicable here. First, in *United States v. Hensley* (1985) 469 U.S. 221, where one law enforcement agency relied on the work of another law enforcement agency, the Court endorsed the collective knowledge doctrine. There, an officer with the St.

Bernard Police Department had a reasonable suspicion that the defendant was involved in a robbery. (*Id.* at p. 223.) The department distributed a "wanted flyer," which advised other law enforcement agencies that the defendant was wanted for robbery. (*Ibid.*) Officers with the Covington Police Department, who had received and relied on the flyer, stopped the defendant. (*Id.* at p. 224.) The Covington officers did not themselves have a reasonable suspicion that the defendant was involved in a robbery. (*Id.* at p. 225.) The Court concluded that the stop was lawful, because the officers relied on the flyer, and the author of that flyer had a reasonable suspicion that the defendant was involved in a robbery. (*Id.* at pp. 233-236.) "[I]f a flyer or bulletin has been issued on the basis of articulable facts supporting a reasonable suspicion that the wanted person has committed an offense, then *reliance* on that flyer justifies a stop[.]" (*Id.* at p. 232, italics added.)

Second, in *People v. Ramirez* (1997) 59 Cal.App.4th 1548, Officer McKnight saw the defendant speeding, and told Sergeant Ortega via radio that the defendant was speeding. (*Id.* at p. 1552.) McKnight also told Investigator Dove that the defendant was "hauling ass." (*Ibid.*) Dove told Ortega that the defendant was getting away at a high speed. (*Ibid.*) Ortega told Sergeant Brown to stop the defendant's car. (*Ibid.*) Although McKnight is the one who initially had probable cause to stop the defendant for speeding, the Court of Appeal concluded that Brown could lawfully stop the defendant: "Brown also *relied* on the collective knowledge of probable cause relayed through official communications to establish his probable cause." (*Id.* at p. 1557.)

Here, there is no evidence in the record that the detaining officer was given any information about a crime. The flyer in

7

*Hensley*, *supra*, 469 U.S. 221, advised the detaining officer that the suspect was wanted for robbery. (*Id.* at p. 223.) The police communications in *Ramirez*, *supra*, 59 Cal.App.4th 1548, indicated that the suspect should be stopped for speeding. (*Id.* at pp. 1551-1552.) Here, as in *Lockridge*, *supra*, 275 Cal.App.2d 612, the prosecution failed to establish that the detaining officer had any information about criminal activity—there was no evidence that the detaining officer knew domestic violence was suspected. The prosecution failed to elicit from Leung that he conveyed to the detaining officer that he had a reasonable suspicion or probable cause to believe that the person described was involved in criminal activity.

"As with all warrantless intrusions, the burden lies with the state to justify a detention. To legally detain an individual because of 'suspicious circumstances,' the prosecution must establish on the record that at the moment of the detention, there were specific and articulable facts, which reasonably caused the officer to believe that (1) some activity out of the ordinary had taken place or was occurring or about to occur; (2) the activity was related to crime; and (3) the individual under suspicion was connected to the activity. [Citation.]" (*People v. Bower* (1979) 24 Cal.3d 638, 644.) Since the circumstances of appellant's detention are unknown, and the prosecution failed to establish that the detaining officer was provided with reasonable suspicion of a crime, the prosecution did not meet its burden of proof in justifying the detention. (*Ibid.)* The trial court should have granted the motion to suppress.

### B. Respondent has not established that the error was harmless beyond a reasonable doubt.

"[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." (*Chapman v. California* (1967) 386 U.S. 18, 24.)  The burden is on Respondent to "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Ibid.*)

A substantial portion of the investigation linking appellant to the assault of Amyah occurred as a result of appellant's unlawful detention.  Amyah did not initially identify appellant as the person who assaulted her.  Amyah did not acknowledge that appellant was the person who assaulted her until after the officers used cell phones to link Amyah to appellant.  This cell phone identification procedure took place well after the unlawful detention.  Respondent does not argue that the evidence obtained during and immediately after the detention was not a "'fruit of the poisonous tree'" (*Wong Sun v. United States* (1963) 371 U.S. 471, 488), nor does Respondent argue that this evidence "did not contribute to the verdict obtained." (*Chapman v. California*, *supra*, 386 U.S. at p. 24.)  Respondent thus fails "to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (*Ibid.*)  We are therefore unable to declare a belief that the violation of appellant's Fourth Amendment right to be secure against unreasonable seizures was harmless beyond a reasonable doubt.

9

## III. DISPOSITION

The judgment is reversed.

HITE, J.

WE CONCUR:


EAST, P.J.


QUINN, J.