Filed 12/3/24  P. v. Lindsey CA2/3

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(a). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115(a).

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ZAVEON D. LINDSEY,<br><br>Defendant and Appellant. | B335245<br><br>(Los Angeles County<br>Super. Ct. No. KA132035) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Juan Carlos Dominguez, Judge.  Affirmed.

Teresa Biagini, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

_____

## INTRODUCTION

A jury convicted Zaveon D. Lindsey of carrying a loaded firearm and of spectating at an illegal motor vehicle speed contest, and found true that the firearm was not registered to Lindsey. Lindsey's appellate counsel filed a brief under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) asking us to independently review the record. We affirm.

## BACKGROUND

One evening in September 2022, California Highway Patrol (CHP) Officer Fernando Larez was informed that local police in Pomona, California, had requested CHP assistance in responding to a street takeover. A street takeover is "essentially comprised of a large number of pedestrians and/or vehicles that block different roadways . . . for the purpose of drag racing or performing illegal doughnuts." When Officer Larez arrived at the street takeover, he witnessed a Lexus "performing doughnuts" in a cul-de-sac while approximately 50 spectators looked on. Several other vehicles were also parked nearby. Many attendees fled, but officers detained 20 to 25 of the spectators, including Lindsey.

The vehicles at the street takeover blocked a roadway in violation of Vehicle Code section 22651, subdivision (b). Officer Larez testified that officers typically impound vehicles in such cases and, in preparation for impoundment, create an inventory of any valuable items inside the vehicles. Officer Larez therefore began conducting an inventory of the vehicles present at the street takeover. One vehicle he inventoried was a red Dodge Charger. In the Charger's trunk, he found a black bag containing a loaded firearm and a debit card bearing Lindsey's first and last name. The firearm was a polymer 80 replica semiautomatic

handgun with no serial number, which Officer Larez described as a "ghost gun" because a gun with no serial number cannot be registered. The People later presented evidence that no firearms were registered to Lindsey.

After seeing Lindsey's first and last name on the debit card, Officer Larez approached the group of detainees, who were seated on the sidewalk or the curb, and asked, " 'who is Zaveon Lindsey?' " Lindsey raised his hand. Lindsey told Officer Larez that he came to the street takeover alone in the Charger, and that nobody else had entered the Charger. Officer Larez had an audio recording device on his uniform linked to the dash camera in his patrol vehicle, which was about 50 feet away. Officer Larez did not activate either recording device during his interaction with Lindsey.

The Charger was registered to Jose Yap. Officer Larez found the registration in the glove compartment during the inventory search, but he did not attempt to determine if Yap was among the detainees. Yap later testified that he was not present at the street takeover. Around July 2022, facing financial issues, Yap had verbally agreed to give the car to Lindsey's mother in exchange for her making monthly payments to Yap's mother. He knew the Charger was registered in his name, but he did not consider himself to be its owner. Yap had cleaned out the Charger when he gave it to Lindsey's mother, including the trunk, and he testified that the items found in the trunk during the inventory search did not belong to him. He had only one key for the Charger, and he gave that key to Lindsey's mother.

About a year after the street takeover, Lindsey was stopped while driving the Charger, which was still registered to Yap.

At the street takeover, officers also impounded a green and purple Pontiac G8.  The impound form for the Pontiac identified Lindsey as the driver.  CHP Officer Raul Gonzalez, who filled out the form, testified that Lindsey said "he had two cars there" and "claimed ownership" of the Pontiac, but Officer Gonzalez was not certain which vehicle Lindsey actually drove to the street takeover.  Officer Larez testified that two other individuals told him that they drove the Pontiac to the street takeover.  The Pontiac was registered to Lindsey, and it was released to him eight days after it was impounded.

Lindsey's friend Dulce Reyes testified that the Pontiac was Lindsey's "daily," meaning the car that he drove on a regular basis.  According to Reyes, Lindsey picked her up in the Pontiac on the day of the street takeover, and they drove to Pomona.  Officers arrived and began detaining attendees.  Two officers described the Pontiac and asked whose car it was, and Lindsey responded that it was his car.  Reyes remembered officers asking who owned a red Dodge Charger, but she did not recall if anyone claimed that vehicle.  Reyes did not tell officers that she was the driver of the Pontiac, but officers gave her a ticket that described her as the driver of that vehicle.  Reyes testified that she and Lindsey picked up the Pontiac from the impound the day after the street takeover.

Lindsey was charged with carrying a loaded firearm in a vehicle (Pen. Code, § 25850, subd. (a)), a felony, and spectating at an illegal motor vehicle speed contest (L.A. County Code, § 13.46.010),[1] a misdemeanor.  The People alleged that Lindsey

---

[1]     Lindsey was also charged with carrying a concealed and unregistered firearm in a vehicle.  (Pen. Code, § 25400, subd.

was not the registered owner of the firearm.  (Pen. Code, § 25850, subd. (c)(6).)

Yap testified at trial.  On the first day of trial, Yap saw Lindsey while getting out of the elevator and asked him what the case was about.  Yap grew concerned when he learned that the case involved a firearm and might incriminate him as the legal owner of the Charger.  Lindsey texted Yap later that day and said something like, "do me a solid . . . just don't say anything . . . ."  Lindsey also texted Yap that Lindsey's mother said Yap should "just plead the Fifth."  Yap "didn't really give it no mind because [he was at the trial] to tell the truth," and in any case he did not know what the Fifth Amendment is.

At trial, defense counsel asserted in his opening statement that there was no clear photograph of the debit card that Officer Larez found in the trunk of the Charger.  Officer Larez later testified that a photograph of the debit card introduced at trial did not clearly depict "the name or the letters" on it.  However, during a break after his cross-examination, Officer Larez located an additional photograph of a gun magazine and the debit card.  The gun magazine covered part of the debit card, but the visible part of the card clearly showed Lindsey's middle initial and last name.  That photograph was admitted into evidence.

Lindsey requested a mistrial, noting that the jury might view defense counsel as dishonest based on the discrepancy between his opening statement and the late-disclosed photograph.  The trial court recognized that "[t]his is probably the worst police work I've ever seen by this officer; incredibly bad

_____

(a)(1).)  Before trial, that charge was dismissed in the furtherance of justice pursuant to Penal Code section 1385, subdivision (c).

police work." However, the court determined that an instruction on late-disclosed evidence would serve as a sufficient sanction. The morning after the late-disclosed photograph was introduced, the court explained to the jury that defense counsel had not been aware of the photograph, and that counsel "was not trying to mislead" the jury during opening statements. The court further explained that Officer Larez identified the photograph "as late as you possibly can produce a piece of evidence that's in court," and instructed the jury that it could "certainly factor [that] in, in evaluating the credibility of" Officer Larez. The court also instructed the jury with CALCRIM No. 306, which informed the jury that "Officer Lare[z] failed to disclose: Close-up photo of the debit card within the legal time period," that this failure may have affected Lindsey's ability to counter the People's evidence and receive a fair trial, and that the jury may consider Officer Larez's failure in weighing the evidence.

The court also recognized that the late-disclosed evidence may have impacted Lindsey's decision to proceed to trial. The court therefore offered Lindsey a new, more lenient plea deal. The People had offered Lindsey probation with 180 days in county jail, and the court offered Lindsey straight probation with no jail time. Lindsey discussed this offer with his counsel, but ultimately rejected it, deciding instead to proceed to trial.

The jury convicted Lindsey as charged. The court placed Lindsey on two years' felony probation under the condition that he serve 180 days in county jail for the felony firearm charge, and one year of summary probation for the misdemeanor charge of spectating at a motor vehicle speed contest. It awarded 13 days of presentence credits, consisting of seven days of custody credits and six days of conduct credits.

6

Lindsey timely appealed.  Court-appointed appellate counsel filed an opening brief that raised no issues and asked this court to independently review the record under *Wende*, *supra*, 25 Cal.3d 436.  We directed appellant's counsel to send Lindsey the record and a copy of the opening brief, and we advised that within 30 days of the date of the notice, Lindsey could submit a supplemental brief or letter stating any grounds for an appeal, or contentions, or arguments he wished this court to consider.  We have not received a response.

## DISCUSSION

Officer Larez opened a container that he found in the trunk during an inventory search of the Charger.  As the Supreme Court has clarified, "standardized criteria, [citation], or established routine, [citation], must regulate the opening of containers found during inventory searches," because "an inventory search must not be a ruse for a general rummaging in order to discover incriminating evidence." (*Florida v. Wells* (1990) 495 U.S. 1, 4; *People v. Williams* (1999) 20 Cal.4th 119, 126 [quoting *Wells*].)  The appellate record does not reflect whether CHP had any policy on the opening of containers found during an inventory search.  However, Officer Larez testified that CHP had a policy of impounding and inventorying vehicles that blocked a roadway, and that his search of the Charger was conducted pursuant to that policy.  "[O]nce the prosecution has offered a justification for a warrantless search or seizure, defendants must present any arguments as to why that justification is inadequate." (*Williams*, at p. 130.)  Lindsey never moved to suppress any evidence found in the Charger and he did not challenge Officer Larez's justification for opening the

7

container.  Lindsey therefore forfeited this issue on appeal. (*Ibid*.)

Before trial, the People moved to admit Lindsey's out of court statements to Officer Larez as party admissions.  The People appeared to concede that Lindsey was not provided with a *Miranda* warning, but they argued that his statements were admissible because the interrogation was not custodial. (*Miranda v. Arizona* (1966) 384 U.S. 436, 444.)  Officer Gonzalez also testified at trial regarding Lindsey's statements about the Pontiac.  The record includes little evidence on this issue.  For example, Officer Larez testified that officers detained the spectators at the street takeover and that Lindsey "was seated on the curb" when Officer Larez first contacted him.  But the record does not reflect whether Lindsey was under "formal arrest" at this time or when he spoke to Officer Gonzalez, nor does it indicate whether he was subject to "a restraint on freedom of movement of the degree associated with a formal arrest."  (*People v. Moore* (2011) 51 Cal.4th 386, 395.)  Yet, even if Lindsey may have been in custody, Lindsey did not oppose the People's motion, nor did he move to suppress his out of court statements to Officer Larez, Officer Gonzalez, or anyone else.  Lindsey therefore forfeited any *Miranda* claim by failing to raise it below.  (*People v. Johnson* (2010) 183 Cal.App.4th 253, 292.)

Lindsey's trial counsel did not object to or move to suppress the evidence found in the Charger or Lindsey's statements to police officers.  If those failures fell below the standard of reasonableness "under prevailing professional norms" and that deficient performance caused him prejudice, his trial counsel may have been ineffective.  (*Strickland v. Washington* (1984) 466 U.S. 668, 688.)  However, "[w]e presume that counsel rendered

adequate assistance and exercised reasonable professional judgment in making significant trial decisions." (*People v. Holt* (1997) 15 Cal.4th 619, 703.) "If the record 'sheds no light on why counsel acted or failed to act in the manner challenged,' an appellate claim of ineffective assistance of counsel must be rejected 'unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation.' " (*People v. Ledesma* (2006) 39 Cal.4th 641, 746.) There is no evidence in the record as to why Lindsey's trial attorney did not object to this evidence or move to suppress it. We also cannot conclude that there could be no satisfactory explanation therefor. For example, Lindsey's counsel may have determined that Lindsey was not in custody when he was questioned and/or that the search of the Charger was consistent with CHP policies. We presume counsel determined that any attempt to contest these issues would have been fruitless.

During trial, after he was cross-examined, Officer Larez located a photograph of Lindsey's debit card that had not been produced to the defense. The due process clause of the Fourteenth Amendment prohibits suppression of "evidence favorable to an accused" which is "material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." (*Brady v. Maryland* (1963) 373 U.S. 83, 87.) We agree with the trial court that Officer Larez's failure reflected "incredibly bad police work." However, the late-produced photograph depicted a debit card bearing Lindsey's middle initial and last name, which was found in the same container as a loaded firearm. This was circumstantial evidence that Lindsey had placed both items in the bag. The photograph was therefore

9

incriminating and does not satisfy the *Brady* test of "evidence favorable to" Lindsey.  (*Ibid.*)

Moreover, after the photograph was admitted, the trial court took appropriate remedial steps.  The court explained to the jury that defense counsel had not been aware of the photograph when he asserted that no clear photograph existed during opening statements, and the court emphasized that the defense "was not trying to mislead" the jury.  The jury was also instructed with CALCRIM No. 306, which directed the jury that Officer Larez's failure to timely disclose the photograph may have denied Lindsey "the chance to produce all relevant evidence, to counter opposing evidence, or to receive a fair trial," and that the jury "may consider the effect, if any, of that late disclosure."  "This language constituted 'a proper statement of the applicable law, from which the parties could argue inferences that might (or might not) be drawn from the evidence presented at trial.' " (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 472 [discussing substantially similar CALJIC No. 2.28].)

We have examined the entire record, and are satisfied that appellate counsel has fully complied with her responsibilities and that no arguable issues exist in the appeal before us. (*Wende, supra*, 25 Cal.3d at p. 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

BERSHON, J.*

We concur:

EDMON, P. J.

EGERTON, J.

---

\* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11