Filed 4/13/26  P. v. Horne CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D085619 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCS327817) |
| FREDDIE LEE HORNE, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Diego County, Maryann D'Addezio, Judge.  Affirmed.

Stephanie L. Gunther, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Eric A. Swenson, Christine Y. Friedman, and Tyler L. Krentz, Deputy Attorneys General, for Plaintiff and Respondent.

Freddie Lee Horne appeals the denial of his motion to suppress based on a theory of de facto arrest not raised with the trial court.  We agree with the People that Horne forfeited this issue.  Resolving this matter by

memorandum opinion (see generally *People v. Garcia* (2002) 97 Cal.App.4th 847), we affirm.

I.

A.

Around 1:00 a.m. one morning, a police officer was dispatched to a gas station in response to a call that someone was "brandishing a firearm." On the way there, the officer spoke by phone with the victim, who reported that the suspect had exited his car and pointed a silver handgun at the victim and his mother.

Based on the description provided, another officer advised that he had located the possible suspect—Horne—at a gas station several blocks away.

Because the officer believed Horne possessed a firearm, he waited until other officers arrived before confronting him. Horne had gotten out of the car and the front diver's door and the trunk "were already open" before the officers made contact. Although Horne was already standing outside his stopped car, the five or six officers conducted what they called a "high-risk vehicle stop" on the belief Horne was "armed or dangerous." At least two officers pointed their guns at Horne while detaining him. Horne was handcuffed and placed into the back of a patrol car.

Once Horne was detained, an officer called the victim to have him come to the gas station "to conduct a curb-style lineup." While waiting for the victim, an officer walked around Horne's car and shined his flashlight into it. Standing near the driver's side open door, the officer noticed a gap between the floor mat and floorboard. To get a better view, the officer bent down, at which point he saw a "chrome-and-brown handle" that he recognized to be the handle of a firearm. The firearm matched the description received from the

2

victim. After finding the firearm, the officer obtained Horne's criminal history and learned he had prior felony convictions.

About 15 minutes after Horne was detained, the victim arrived, at which point he identified Horne as the person who had earlier brandished a firearm. Officers then arrested Horne.

## B.

Horne moved to suppress the firearm. In his motion, Horne argued "the gun was not found in plain view" and the prosecution had the burden to prove the warrantless search and seizure was reasonable.

The prosecution, in an opposing brief and at the motion hearing, argued (1) the officers had reasonable suspicion for the investigatory stop, (2) the officers acted diligently such that the detention was not prolonged, (3) the firearm was in plain view, and (4) the officers had probable cause to arrest Horne after finding the firearm.

Horne did not respond in writing to the prosecution's opposition brief.

At the motion hearing, defense counsel argued (1) the gun was not in the officer's plain view because he had to crouch down and use a flashlight to see it, (2) Horne's detention was prolonged, and (3) the officers' contact with Horne was "suspicious" given he drove a different color car than the victim reported. Defense counsel emphasized that "the main issue[] in this case . . . is plain view."

The trial court denied the motion to suppress.

## C.

After the court denied Horne's motion to suppress, the case proceeded to trial. A jury found Horne guilty of possession of a firearm by a felon (Pen. Code, § 29800, subd. (a)(1); count 1) and having a concealed firearm in a vehicle (§ 25400(a)(1); count 2) but not guilty of drawing or exhibiting a

3

firearm (§ 417(a)(2); count 3).  The trial court imposed a suspended two-year sentence and placed Horne on probation, with the first 180 days to be served in county jail.

## II.

On appeal, Horne argues his suppression motion should have been granted because his initial detention constituted a de facto arrest without probable cause.  The People contend this argument is forfeited because Horne did not raise it with the trial court.  We agree with the People.

"[D]efendants must specify the precise grounds for a motion to suppress, including pointing out any inadequacies in the prosecution's justifications for a warrantless search or seizure." (*People v. Williams* (1999) 20 Cal.4th 119, 135.)  "Defendants who do not give the prosecution sufficient notice of these inadequacies cannot raise the issue on appeal." (*Id.* at p. 136.) "The determinative inquiry in all cases is whether the party opposing the motion had fair notice of the moving party's argument and fair opportunity to present responsive evidence." (*Id.* at p. 135.)

Horne never argued his initial detention was a de facto arrest before the trial court.  His attempts to avoid forfeiture do not persuade us.

Horne claims the de facto arrest issue was preserved because it goes to the first prong of the plain view doctrine addressed at the suppression hearing.  This exception to the warrant requirement permits seizure of evidence in plain view if (1) the initial intrusion is lawful and (2) the evidence's incriminatory nature is immediately apparent. (*United States v. Hudson* (9th Cir. 1996) 100 F.3d 1409, 1420.)  The prosecution argued lawfulness of the initial detention based on the officers' reasonable suspicion for an investigatory stop that was not prolonged.  But trial defense counsel never alerted the prosecution that, as Horne now contends, probable cause

4

rather than reasonable suspicion was required for this purported de facto arrest. On the contrary, Horne concedes "[a]ll parties, including trial counsel, . . . overlooked (and assumed) . . . that the initial intrusion was lawful." This concession is fatal to Horne's appeal, as it confirms the prosecution was not given fair notice of or opportunity to respond to this de facto arrest argument.

Horne pivots in reply by asserting trial defense counsel in fact contested the lawfulness of Horne's initial detention by commenting that "the initial contact was 'suspicious'" based on the apparent mismatch between the color of Horne's car and the victim's description. But as the People note, Horne's new arguments about a de facto arrest "rest on different facts and legal bases." Horne argues the initial detention constituted a de facto arrest because (1) it was based on a misdemeanor that did not occur in the officers' presence and (2) the circumstances of the detention—multiple officers, some of whom pointed their weapons at Horne, handcuffed Horne and placed him in the back of a patrol car—took the encounter beyond an investigatory detention. As a result, the comment about the color of Horne's car failed to "inform[] the prosecution of the need to adduce greater detail" about the justification for and circumstances of the initial detention and why it either did not constitute a de facto arrest or probable cause justified any de facto arrest. (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 236.)

Finally, Horne notes the prosecution argued the officers had probable cause to arrest Horne and was thus "prepared for and responded to the claim that [Horne] was illegally arrested." What Horne omits, however, is that all discussions of probable cause in the trial court centered on *after* the officers found the firearm in Horne's car. The prosecution had no notice of the need to prove probable cause when first detaining Horne.

We thus conclude the de facto arrest issue is forfeited.

III.

We affirm.

CASTILLO, J.

WE CONCUR:

McCONNELL, P. J.

DATO, J.